160

HELVERING, Com'r of Internal Revenue, v.
TALBOTT'S ESTATE et al.
No. 4668.

Circuit Court of Appeals, Fourth Circuit.
Dec. 10, 1940.

L. W. Post, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Norman D. Keller, Sp. Asst. to Atty. Gen., on the brief), for petitioner.

Walter E. Barton, of Washington, D. C. (Bryan Carver, of Hot Springs, Va., on the brief), for respondent.

Before PARKER, SOPER, and NORTHCOTT, Circuit Judges.

SOPER, Circuit Judge.

This petition asks for a review of a decision of the Board of Tax Appeals wherein it was found that certain property held in trust by the Equitable Trust Company of New York was not subject to estate taxes as part of the estate of William M. Talbott, deceased, but belonged to Eleanor B. Talbott, his surviving wife. The contention of the Commissioner that there was a deficiency in estate taxes under the Revenue Act of 1926, as amended, 26 U.S.C.A. Int.Rev.Acts, page 145 et seq., was overruled.

The decedent died on November 15, 1935, leaving a will by which he bequeathed all of his property to his wife, and named her and his brother, Charles Foster Talbott, as executors of his estate. Charles Foster Talbott died in 1937 and the wife became the sole surviving executrix. The property in question was placed in trust on July 5, 1923 by a trust indenture executed by the wife, as grantor, and the Trust Company, as grantee. The indenture, reciting the desire of the grantor to create a trust for certain purposes, contained a granting clause whereby all the right, title and interest of the grantor in securities listed in an annexed schedule was granted and conveyed to the Trust Company, and also a clause wherein the Trust Company signified its acceptance of the trust and acknowledged receipt of the securities. The indenture also provided that the trustee should pay the income from the property to the decedent and his wife during their joint lives, and after the death of one of them, then to the survivor for life, and that upon the death of both, the trustee should convey the trust fund and all accumulated income in equal shares to four named persons, including Charles Foster Talbott. The trust indenture reserved the right to modify or revoke the trust and the estates in property created by the indenture, to be exercised

by an instrument executed by the wife and the decedent, or the survivor of them, together with Charles Foster Talbott, the instrument of revocation to direct the distribution of the trust fund and the trustee to execute the necessary conveyances to carry the revocation into effect.

The Commissioner of Internal Revenue relied upon the following facts relating to the trust property to support his contention that it constituted a part of the decedent's estate at the time of his death. On October 6, 1921, the decedent and his wife established a joint checking account in the banking department of the Trust Company, each having previously had a checking account in that institution. On April 3, 1923, the decedent and his wife conferred with a firm of lawyers in regard to the creation of a trust, and the trust indenture of July 5, 1923 was prepared as the result of the conference. Prior to June 6, 1923, the decedent had had in the Trust Company a separate securities account to which he had made transfers of securities. On that date he caused this account to be converted into a joint securities account for himself and his wife, subject to the individual instructions of either; and thereafter from time to time until the creation of the trust, transfers of securities were made by the husband and wife to the joint account. On July 13, 1923, after the execution of the trust indenture, the securities listed on the schedule of securities attached to the deed were taken from the joint securities account of the decedent and his wife and transferred to the trustee and became a part of the trust corpus. Other securities were added thereto on November 14, 1929 by the wife, pursuant to her letter of transmittal to the trustee, in accordance with her right to do so, reserved in the trust instrument. Under these circumstances, the Commissioner reached the conclusion that the various items comprising the trust fund were the property of the decedent and that the Bureau of Internal Revenue was justified in treating the trust fund as one created by the decedent, although the wife was the nominal trustor.

The Commissioner deducted from the amount of the trust fund the value of the life interest of the wife and of the remainderman interest of Charles Foster Talbott, and included the balance of the fund in the decedent's gross estate. He made this deduction under the authority of Article 20 (b) (1) of Regulations 80 (1937 Ed.), which provides that regardless of when a transfer in trust was made, if the decedent died after the enactment of the Revenue Act of 1916, 39 Stat. 756, and power was reserved to be exercised by the decedent alone or in conjunction with a person or persons having no substantial adverse interest in the transferred property, or to be exercised in conjunction with a person having a substantial adverse interest, then to the extent of any interest held by a person not required to join in the exercise of the power, the property transferred should be included in the gross estate.

The Board of Tax Appeals held, however, that under the New York decisions (see Helvering v. Miller, 2 Cir., 75 F.2d 474) the wife became the owner of a one-half interest in the securities in the joint account when it was opened by the decedent, and hence she owned outright a half interest in the trust fund prior to the execution of the trust indenture. As to the other half interest, indeed as to the whole interest, the Board held that a presumption of absolute ownership by the wife arose from the execution by her of the trust indenture and the recognition of her ownership by the Trust Company in its acceptance of the trust, and acknowledgment of the receipt of the securities. See in this connection, Belford Clarke & Co. v. Scribner, 144 U.S. 488, 12 S.Ct. 734, 36 L.Ed. 514; Williams v. United States, Ct.Cl., 41 F.2d 895; Wigmore on Evidence, 2d Ed., Paragraph 2515; Jones on Evidence, 3d Ed., Paragraph 74. Cf. Jackson v. Commissioner, 4 Cir., 64 F.2d 359; McInerney v. Commissioner, 6 Cir., 82 F.2d 665; Johnson v. Commissioner, 2 Cir., 86 F.2d 710.

This presumption prevailed, in the opinion of the Board, since no rights contravening the wife's ownership and no facts inconsistent with a gift from husband to wife were found in the record, and since the decedent retained no right whatsoever to any portion of the trust corpus, and no ultimate right of control. The Board found no sufficient support for the Commissioner's contention in the events that occurred from April 3, 1923 to July 13, 1923, or in the fact that the decedent and his wife discussed with the lawyers the creation of the trust, holding it a fair inference that the discussion related to a trust to be established by the wife and not by the husband. In short, the Board, confining itself to the stipulated facts as the basis of its judgment, held it to be clear that the corpus of

the trust belonged to the wife and not to the decedent.

 We are in accord with the finding of the Board since there is substantial evidence to support it. "To draw inferences, to weigh the evidence and to declare the result was the function of the Board." Helvering v. National Grocery Co., 304 U.S. 282, 294, 58 S.Ct. 932, 938, 82 L.Ed. 1346. It is not enough to say that under decisions such as Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212, the ruling of the Commissioner has the support of a presumption of correctness, and the taxpayer has the burden of proving that it is wrong. When a taxpayer controverts the determination of the Commissioner, the Board becomes the trier of facts, and this court is bound to accept its findings if there is substantial evidence to support them. When such evidence is adduced, the Commissioner's finding is no longer entitled to probative force and the authority of the Board to make the controlling decision is complete.

It is true that the stipulations of fact show that the securities which went into the corpus of the trust came from the joint account of decedent and his wife; but it does not follow that they were not given to the wife so as to become her sole property when deposited subject to the trust provisions. If decedent had transferred the securities to his wife's account prior to their acquisition by the trustee, no one would contend that the trust was not created by her. It can make no difference that this preliminary step was not taken, if they were in fact transferred to the trustee to be subject to the trust which she was creating. After they had thus been subjected to the trust, there would have been no question as to their being treated as property placed in trust by the wife, if she, instead of the decedent, had died and the question of taxation related to her estate.

It is also contended by the taxpayer that even if the property belonged to the decedent when the trust was created in 1923, it was no part of his estate when he died in 1935. It is said that the transfer was manifestly not made in contemplation of death or to take effect in possession or enjoyment at or after death under the Revenue Act of 1921, 42 Stat. 227, and that the provisions of § 302 of the Revenue Act of 1926, as amended by the Revenue Acts of 1932 and 1934, 26 U.S.C.A. Int.Rev.Acts,

page 227 et seq., with regard to transfers in trust subject to change by the decedent, either alone or in conjunction with another person, cannot be applied constitutionally to a transfer made before the passage of the statutes. But we need not consider this contention since we have reached the conclusion that there was evidence to support the finding of the Board that the trust fund belonged to the wife.

The decision of the Board is affirmed.