J. M. PERRY & CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.

No. 9662.

Circuit Court of Appeals, Ninth Circuit.

May 23, 1941.

H. B. Jones, of Seattle, Wash., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Louise Foster, and Arthur L. Jacobs, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, GARRECHT, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

The Commissioner of Internal Revenue determined that the petitioner-taxpayer was subject to additional taxes for the years 1935 and 1936, as imposed by Section 102 of the Revenue Acts of 1934 and 1936 [c. 277, 48 Stat. 680, 26 U.S.C.A.Int.Rev.Acts, page 690; c. 690, 49 Stat. 1648, 26 U.S.C. A. Int.Rev.Acts, page 851]. The Board of Tax Appeals sustained the determination of the Commissioner, and the taxpayer seeks a reversal.

Section 102 of the 1936 Act provides,[1] so far as here applicable:

"(a) Imposition of tax. There shall be levied, collected, and paid for each taxable year (in addition to other taxes im-

---

[1] The 1934 Act contains similar provisions, which may be treated as identical so far as the issues of this case are involved.

posed by this title) upon the net income of every corporation (other than a personal holding company as defined in section 351) if such corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting earnings or profits to accumulate instead of being divided or distributed—[here appear rates of tax].

"(b) Prima facie evidence. The fact that any corporation is a mere holding or investment company, or that the earnings or profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to avoid surtax upon shareholders."

The taxpayer's first arguments relate to the determination of the Commissioner and the burden of proof. It is urged that since the Commissioner made no finding of fact to the effect that the corporation was "formed or availed of" for the purpose of avoiding taxes, there is no presumption of correctness of the Commissioner's determination, citing First National Bank of Boston v. Commissioner, 1 Cir., 1933, 63 F.2d 685.

In the cited case the determination of tax was by virtue of Section 302 of the Revenue Act of 1926, 26 U.S.C.A.Int.Rev.Acts, page 227, providing for the imposition of a tax on transfers made in contemplation of death. At the time of the Commissioner's determination the law provided that gift transfers made within two years of the decedent's death were conclusively presumed to have been made in contemplation of death. This provision was later declared unconstitutional. The transfers involved were gifts made within two years of the decedent's death. The Commissioner made no finding as to whether he was relying upon this conclusive presumption in determining the deficiency, or whether he found that the transfers were actually in contemplation of death. The Board of Tax Appeals treated the Commissioner's determination as presumptively correct on the question of whether or not the transfers were in contemplation of death, and since the taxpayer did not rebut the presumption of correctness, sustained the determination. The Circuit Court of Appeals remanded the case to the Board of Tax Appeals for the taking of evidence on the question, holding that in the circumstances of the case the decision of the Commissioner could not be regarded as making a prima facie case, in the absence of convincing proof that the Commissioner found that there was an actual contemplation of death.

The taxpayer in relying on the cited case overlooks the fact that here the Commissioner's determination of a deficiency necessarily includes a finding either that the corporation was formed or availed of for 'the prohibited purpose. No other set of facts would give rise to the deficiency. Since the taxpayer was organized before the first income tax statute was enacted in 1913, 38 Stat. 114, there could be no possibility that the corporation comes within the first class, that is, it is not possible that it was formed for the forbidden purpose. It follows that the Commissioner must have found that the corporation was "availed of" for that purpose. This finding is presumptively correct, that is, until the taxpayer proceeds with competent and relevant evidence to support his position, the determination of the Commissioner stands. When such evidence has been adduced the issue depends wholly upon the evidence so adduced and the evidence to be adduced by the Commissioner. The Commissioner cannot rely upon his determination as evidence of its correctness either directly or as affecting the burden of proof. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212; Helvering v. National Grocery Co., 304 U.S. 282, 294, 295, 58 S.Ct. 932, 82 L.Ed. 1346; Helvering v. Talbott's Estate, 4 Cir., 1940, 116 F.2d 160, 162. There was no error in the Board's denial of the taxpayer's motions submitted at the commencement of the hearing, "first, that issue should be found against Respondent upon the pleadings, in so far as it is based on Section 102, and in the alternative, that the burden of proof of establishing the facts calling for the application of Section 102 be put on the Respondent, for the reason that he had made no determination of fact on which to ground his application of the statute".

At the hearing before the Board of Tax Appeals the taxpayer attempted to show by various witnesses that its failure to declare dividends in the years 1935 and 1936 was not due to an intention to prevent the imposition of surtax upon its stockholders. It attempted to prove its point by testimony to the effect that the undistributed income of the corporation was reasonably

required by the corporation for contemplated repairs and working capital.

The Board, however, made findings to the effect that the taxpayer's gains and profits were permitted to accumulate beyond the reasonable needs of the business during the years in question. It is obvious that if this finding is sustained, the decision of the Board must be affirmed, for the Act, quoted above, provides that the fact that earnings or profits of a corporation are permitted to accumulate beyond the reasonable needs of the business, constitutes prima facie evidence of a purpose to avoid the individual surtax. The decision of this case, therefore turns on whether or not this finding is to be sustained.

■■ The taxpayer maintains that the finding is an ultimate conclusion "to be distinguished from the findings of primary, evidentiary, or circumstantial facts", citing Bogardus v. Commissioner, 302 U.S. 34, 58 S.Ct. 61, 64, 82 L.Ed. 32; Helvering v. Tex-Penn. Oil Co., 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755; Hawke v. Commissioner, 9 Cir., 1940, 109 F.2d 946; and A. R. Jones Oil & Operating Co. v. Commissioner, 10 Cir., 1940, 114 F.2d 642. It is argued from the cited cases that this Court should substitute its judgment for that of the Board as to the reasonableness of the accumulation. We do not agree. What is or is not reasonable in the circumstances in a given case is clearly a question of fact—to be determined by the fact finding body, in this instance the Board of Tax Appeals. The determination of that body is binding on us if it is supported by substantial evidence. See Commissioner of Internal Revenue v. Cecil B. De Mille Productions, 9 Cir., 1937, 90 F.2d 12, and cases there collated.

■ We turn, therefore, to an examination of the evidence to resolve the question as to the presence of applicable substantial evidence.

It appears that the taxpayer corporation was engaged in the business of cold storage and warehousing in Yakima, Washington. It maintained a cold storage plant, divided into four units, having a total capacity of 490,000 boxes of fruit. It presented evidence to the effect that various alterations and repairs to its plant were contemplated in the tax years. Other witnesses for the taxpayer testified that $250,000 was a reasonable amount for a business of the size and character of that of taxpayer to retain on hand for working capital, including financing of growers.

Taxpayer's balance sheets for 1935 and 1936[2] disclose the following: On December 31, 1935, taxpayer had on hand over $150,000 cash, and almost $49,000 in United States and other bonds. On this same day it owed in accounts payable only the sum of $312.16. On December 31, 1936 the cash on hand had increased to over $268,000,

---

[2] The 1935 and 1936 balance sheets are as follows:

### ASSETS

|  | 1935 | 1936 |
| --- | --- | --- |
| Cash | $151,283.05 | $268,200.82 |
| Notes Receivable | 111,663.40 | 100,300.40 |
| Accounts Receivable | 6,388.08 | 33,496.34 |
| Investments [U.S. and other bonds] | 48,906.86 | 71,750.05 |
| Farms and Equipment | 86,219.42 | 72,350.00 |
| Land | 49,731.74 | 49,731.74 |
| Buildings | 250,782.37 | 235,023.82 |
| Less [Deprec. Reserve] | [174,338.42] | [179,606.48] |
| Bank Time Deposit | 82,267.04 |  |
| **Total Assets** | **$612,933.54** | **$651,252.49** |

### LIABILITIES

|  | 1935 | 1936 |
| --- | --- | --- |
| Accounts Payable | $     312.16 | $     843.87 |
| Deferred Profit |  | 140.73 |
| Reserve for Replacements | 100,000.00 | 100,000.00 |
| Reserve for Power Plant | 35,000.00 | 35,000.00 |
| Common Stock | 50,000.00 | 50,000.00 |
| Surplus Paid in | 103,664.02 | 103,664.02 |
| Surplus Earned | 323,957.36 | 361,603.87 |
| **Total Liabilities** | **$612,933.54** | **$651,252.49** |

126

and the investment in bonds had increased to over $71,000. The accounts payable amounted to only $843.87.

As against the taxpayer's evidence as to contemplated repairs and necessary working capital, it was developed that the contemplated alterations and repairs have never been made, and that the peak of the taxpayer's financing loans in 1935 and 1936 amounted to approximately $35,000.

It also appeared that in spite of the fact that the taxpayer contended that it needed to maintain this large cash reserve on hand, it proceeded to make various investments which had no relation to its storage business. In 1934 it purchased mining stock, which it sold in 1935 at a profit of $47,-995.29. In 1935 it purchased for cash 45 residential lots in Yakima, and commenced construction of two houses at a cost of about $4,000 to $5,000 each. It also purchased for cash a bank building in Yakima, which was sold to the principal stockholder, Perry, in 1936, for its cost to taxpayer, and the price was charged to Perry's account. It also loaned money to various individuals in 1935, not in any manner connected with its fruit business. These loans in 1935 aggregated about $100,000. In the year 1936 Perry borrowed from the corporation over $30,000.

All of these things may reasonably have appealed to the Board as incompatible with a purpose to strengthen the financial position of the taxpayer and to provide for needed alterations. The Board's determinations find ample support in the evidence.

Affirmed.