OPINION. HaRiiox, Judge-. Issue 1. — The first issue presents a question of fact; namely, whether the trusts executed by John and Kate Eckhardt on July 2 and July 8, 1935, respectively, were created independently of each other, as petitioners contend, or whether they were reciprocal and made in consideration of each other, as respondent contends. The respondent has determined that the trusts were cross-trusts, created and executed under a common plan between husband and wife, and that, in effect, the grantors exchanged their undivided one-half interests in the property so that each was the real settlor of the trust nominally created by the other. Since each grantor was given a life estate under the trust created by the other grantor, respondent has included the corpus of each trust in the respective decedent’s estate as a transfer intended to take effect at death under section 811 (c) of the Internal Revenue Code.[1] Respondent relies upon Lehman v. Commissioner, 109 Fed. (2d) 99; Estate of Frederick S. Fish, 45 B. T. A. 120; and a memorandum opinion of this Court, affirmed in Hanauer v. Commissioner, 149 Fed. (2d) 857, C. C. A., 2d Cir. Petitioners contend that the facts of the case bring it within our holding in Estate of Samuel S. Lindsay, 2 T. C. 174, and assert that each settlor did not know of the other settlor’s action in the creation of the trusts, so that there could be no agreement or concert of action between them. In this connection, they stress the fact that the trusts were not simultaneously executed. In determining the question presented, all the facts and circumstances attendant upon the creation and execution of the trusts must be carefully scrutinized, for the transactions had their genesis within the intimate family circle. The respondent’s determination that there was a concert of action or at least a tacit agreement between the husband and wife is presumptively correct, and the burden of proving the error of such determination is upon the petitioners. In this type of situation, where the subject matter of each trust is the same, where the beneficial interests are the same, and where the trusts have been executed within such a short time of each other, the discharge of the burden is difficult, and this is especially so where both grantors are deceased. We have carefully examined and considered all the oral and documentary evidence adduced at the hearing. From such examination and consideration, we can not find that the trusts were created independently of each other. Rather, the reasonable inferences to be drawn from much of the testimony is that each grantor knew of the other grantor’s contemplated trust and that the trusts were made in consideration of each other. It should be noted at the outset that both of the decedents during their entire married life were unusually intimate in their financial and business affairs. They habitually consulted with each other in connection with personal and business matters. For many years prior to 1920 they had jointly operated a department store in Buffalo, New York. Subsequent to the execution of the trusts which are involved in this proceeding, they again formed a business enterprise to jointly operate a department store. They had for many years maintained a joint bank account and a joint safe deposit box. The subject matter of the two trusts was also jointly owned real estate. It would seem a paradox that, having jointly managed their personal and business affairs over the entire course of their married life, in their advanced years they would each conceive a plan to create a trust independently of the other, especially since the provisions of each trust were so similar and they were created and executed almost simultaneously. The two trust instruments, which contained many provisions, were substantially identical. Under each trust the spouse and the daughter, Alice E. Becker, received successive life estates, with the principal to be paid upon the death of Alice E. Becker to the appointees under her will. To hold that, under these circumstances, the trusts were independently created would be to disregard the realities of life. The petitioners admit that from June 20 to July 2, 1935, Kate L. Eckhardt knew of the intended creation of the John H. Eckhardt trust and knew of the subject matter thereof. Apparently, she also knew that she was a beneficiary under the trust, for on July 2, 1935, she signed her husband’s trust indenture as trustee and also on the same date executed a deed to the trustees of the John H. Eckhardt trust which contained a recital that the trust was for her benefit. It is also significant that the attorney who drew both trusts completed a draft of Kate’s trust on June 20, 1935, and on the same date completed the final draft of John II. Eckhardt’s trust. The petitioners also admit that neither John Eckhardt nor Kate Eckhardt had been instructed not to discuss the creation of their respective trusts with each other. In view of this and their joint actions during their marital life, it is unreasonable to assume that such discussions did not take place. It is also important to note that on July 2,1935, both decedents executed a series of deeds in connection with the property which was placed in trust, all of which was preparatory to the placing of the property in such condition that both trusts could be created. The chief witness in behalf of the petitioners was decedents’ daughter, Mrs. Becker. She was the sole legatee under the will of each of the decedents and obviously was a biased witness. Her testimony was not impressive. She was adamant in stating that neither of the decedents knew of the intended execution of the other decedent’s trust, but when asked to give an explanation of such testimony she was unable to do so except to state that she knew that fact to be true. She insisted on these assertions, although she admitted that the decedents had not been instructed to withhold the information about the creation of the respective trusts from each other and that she was not always m their presence. The record also contains testimony that the reason for the execution of the trusts was that each of the decedents wished to be relieved of the burden of the management of the real estate and of the annoyance in dealing with tenants. Yet within a short time after the execution of the trusts the decedents leased the property from the trustees for a term of twenty years. Thereafter, they erected a building, formed a new corporation to hold the lease, and subleased the property. Each of the decedents was an officer, stockholder, and director in this corporation, and each took an active part in the management of the property. In view of the conduct of the decedents subsequent to the creation of the trusts, it seems apparent that the reason for the creation of the trusts could not have been a desire to relieve the decedents from the management of the property. It is therefore concluded that John H. Eckhardt and Kate L. Eckhardt'did not create their respective trusts independently of each other and without any prior concert of action or understanding. From the evidence, we are satisfied that these trusts were executed under such circumstances as would justify the respondent in determining that they were reciprocal and executed in consideration of one another. The evidence submitted in behalf of the petitioners was not sufficient to rebut the presumption of the correctness of that determination. It is therefore held that the undivided one-half interest of each decedent in the real property was, in effect, exchanged by them, and that for estate tax purposes each decedent should be regarded as the real settlor of the trust nominally created by the other. Since each decedent retained a life estate in the trust created by him, the value of the corpus of such trust is includible in his gross estate under section 811 (c) of the Internal Revenue Code. Issue 2. — This issue arises from respondent’s determination that the value of a reversionary interest in the trust created by Kate L. Eck-h irdt on April 6,1935, for the benefit of her grandson, Dean Becker, is includible in her gross estate as a transfer intended to take effect in possession or enjoyment at or after her death. This determination was based upon the fact that the corpus of the trust might revert to Kate L. Eckhardt if she survived Dean and his issue and Dean’s mother, Alice E. Becker. In support of his determination, respondent relies upon Fidelity-Philadelphia Trust Co. v. Rothensies, 324 U. S. 108; Commissioner v. Field, 324 U. S. 113; and Helvering v. Hallock, 309 U. S. 106. Petitioners, on the other hand, rely upon our holding in Frances Biddle Trust, 3 T. C. 832, and similar cases. Under the trust indenture, the trust income was payable to Dean during the period of the trust, and, in the discretion of the trustees, a part of the principal could be used for his benefit. It was also provided that he was to receive 10 percent of the principal upon his attaining the age of 30 years, and an additional 10 percent every two years thereafter, until at the age of 40, he was to receive the entire balance of the principal. If he died before attaining the age of 40, the principal was to go to his surviving issue, and, in the event that he died prior to that time without issue, his mother, Alice E. Becker, was to receive the principal. If Alice died without issue and was survived by Kate L. Eckhardt, then the principal was to go to Kate or to such persons as she might appoint by will, and, in default of such appointment, to Kate’s heirs. In the Frances Biddle Trust case, supra, we held that, while the decedent’s death ended a remote possibility of reverter, it did not enlarge or augment the estate of the remaindermen, and thus was not “the intended event which brought the larger estate into being for the grantee * * *.” In Estate of Harris Fahnestock, 4 T. C. 1096 (Apr. 3, 1945), and Estate of Mary B. Hunnewell, 4 T. C. 1128 (Apr. 16, 1945), we reaffirmed the rationale of the Frances Biddle Trust case and distinguished the Fidelity-Philadelphia Trust case, supra. Our holding in those cases is controlling here. It is clear that decedent intended to make a complete gift for the benefit of her grandson. The principal was payable to him in gradual installments until at the age of 40 years he was to receive the entire amount. The decedent’s death could not, therefore, enlarge his estate or affect his interests. In the Ilallock case and the Fidelity-Philadelphia Trust Co. case, the settlors had retained such control over the trust, estate that their deaths were the determinative factors in determining which beneficiaries took under the trusts and the extent of their interests. Here, no interest in the trust estate passed or was created by virtue of the death of Kate L. Eckhardt. The remote possibility of her reacquiring the corpus, in the event she survived the named beneficiaries, does not require the conclusion that she intended the trust to take effect at her death. On the contrary, we think she intended that, the interests created by the trust were to vest immediately. In our opinion, the trust instrument here is more akin to the trust instruments which were construed in the Biddle case and the Fahnestock, case than to the survivorship trusts which were construed bv the Supreme Court in the Ilallock case and the FideFity-Phila-delphia Trust Co. case. Therefore, on the authority of the Biddle case and the Fahnestock case, petitioners are sustained on this issue. Accordingly, Decision null he entered under Rule 50 SEC. 811. GROSS ESTATE. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States— * * * * * * * (c) Transfers in Contemplation of, or Taking Effect at Death. — To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. • * •