ESTATE OF ARNOLD RESCH, DECEASED, THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK, ANCILLARY EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26512. Promulgated April 27, 1953.

*Thomas A. Ryan, Esq.*, for the petitioner.
*Rigmor O. Carlsen, Esq.*, for the respondent.

174

### OPINION.

HARRON, *Judge: Issue 1.* The first question concerns the Arnold Resch trust created by the decedent on June 9, 1931, and amended on May 4, 1932. The respondent contends, in the first instance, that the decedent in substance reserved the use of, or the right to the income from, the transferred property within the scope of section 811 (c) (1) (B) as amended. Respondent does not argue that the decedent ac-

tually retained, under the terms of the trust agreement, the right to, or the means by which he could enforce the payment of, the income to himself for a period which did not end before his life. He concedes in his argument that income was payable to the decedent within the sole discretion of the corporate trustee. However, respondent urges that the trustee did in fact pay over the income to the decedent pursuant to his request and claims that it is inconceivable that the trustee would act otherwise; further, that if policies of insurance on decedent's life had been placed in the trust the income would have been used to discharge an obligation otherwise payable by the decedent. In either event, the respondent concludes, the income was effectively reserved by the decedent for his own use. The petitioner contends that under the provisions of the trust agreement the decedent retained no interest in the trust which would require its inclusion in his gross estate. Specifically, the decedent had no right to require the trustee to make payments of income or principal to himself. We do not agree with the arguments advanced by either of the parties.

We are of the opinion that the corpus of the Arnold Resch trust, created by the decedent on June 9, 1931, is includible in his gross estate under section 811 (c) (1) (B), as amended, because under the terms of the trust agreement, as amended, the decedent retained the right to the trust income for a period which did not end before his death. The applicable provisions of the Code, as amended by section 7 of P. L. 378, 81st Cong. (1949), hereinafter referred to as The Technical Changes Act, are set forth in the margin.[1]

Section 7 (b) of The Technincal Changes Act, as amended by sections 608, 609, of the Revenue Act of 1951, reads as follows:

(b) The amendment made by subsection (a) shall be applicable with respect to estates of decedents dying after February 10, 1939. The provisions of section 811 (c) of the Internal Revenue Code, as amended by subsection (a), shall (except as otherwise specifically provided in such section or in the following two sentences) apply to transfers made on, before, or after February 26, 1926.

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States.—

* * * * * * *

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH.—

(1) General Rule.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

* * * * * * *

(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom ; or

The provisions of section 811 (c) (1) (B) of such code shall not, in the case of a decedent dying prior to January 1, 1951, apply to—

(1) A transfer made prior to March 4, 1931; or

(2) A transfer made after March 3, 1931, and prior to June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the Joint Resolution of March 3, 1931 (46 Stat. 1516).

The transfer in trust by the decedent was made on June 9, 1931, and the decedent died on February 20, 1942. The issue, therefore, becomes a narrow one, namely, whether the transfer is includible in the gross estate "by reason of the amendatory language of the Joint Resolution of March 3, 1931."

The Joint Resolution of March 3, 1931, reads as follows:

Resolved * * *, That the first sentence of subdivision (c) of section 302 of the Revenue Act of 1926 is amended to read as follows:

"To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth."

The purpose of the Joint Resolution of March 3, 1931, was to avoid the decision of the Supreme Court in *May* v. *Heiner* [2] and subsequent cases [3] and to tax transfers under which a decedent reserved the right to the income for his life, or for any period not ending before his death.[4] The third sentence of section 7 (b) of The Technical Changes Act did not create any new guides for the judicial construction of the amendatory language of the Joint Resolution. *Estate of Myron Selznick*, 15 T. C. 716, 726.

The trust agreement, as amended on May 4, 1932, provided that the net income of the trust and so much of the corpus as may be necessary was to be applied by the trustee "to the payment of premiums, assessments and other charges on any policy or policies insuring the life of the Settlor included in the trust estate until the policies become fully paid." Under article four of the trust agreement as amended, the decedent reserved the right to "add to this trust policies of insurance on the life of the Settlor * * * to be held by the Trustee on the terms and conditions herein specified" and "to

---

[2] 281 U. S. 238.

[3] *Burnet* v. *Northern Trust Co.*, 283 U. S. 782; *Morsman* v. *Burnet*, 283 U. S. 783; *McCormick* v. *Burnet*, 283 U. S. 784.

[4] The insertion of the words "the right to the income" in section 803 (a) of the Revenue Act of 1932, in place of the words "the income," appearing in the Joint Resolution of March 3, 1931, was a clarifying change and did not represent new matter. See S. Rept. No. 665, pp. 49, 50 and H. Rept. No. 708, p. 47, 72d Cong., 1st Sess. (1932). See also *Hassett* v. *Welch*, 303 U. S. 303.

receive any dividends, earnings or payments of any kind made pursuant to the provisions of any policy or policies of insurance held under this agreement."

It becomes apparent that, under the foregoing provisions of the trust agreement, the decedent at any time could have applied for, inter alia, a single premium, income-yielding policy of insurance on his life, at a cost equivalent to the then value of the trust corpus, caused the policy to be issued to the trustee for the payment of the premium or assessment, at which time the policy would become effective, and thereafter received the "dividends, earnings or payments of any kind" from the policy for his life. Or, the decedent could have applied for participating, i. e., dividend paying, policies of insurance on his life, paid the initial premiums himself, and then added the policies to the trust. The trustee would have been obliged under the trust agreement to consume the entire corpus, if necessary, in paying the annual premiums or other assessments on the policies. In that event the decedent could have received, by way of dividends or other payments made pursuant to the policies, the entire income from the trust corpus for his life. Since the trustee was obliged to consume the corpus, if necessary, in paying life insurance premiums on policies held in the trust, and since the decedent reserved the right at any time to add to the trust policies of insurance on his life and to receive the "dividends, earnings or payments of any kind made pursuant to the provisions of any policy," we are of the opinion that the decedent has retained for his life the right to, or the means by which he could legally require the payment of, the entire trust income to himself within the purview of section 811 (c) (1) (B) of the Code.

Had the trustee been directed to use only income for the payment of policy premiums, the decedent, by reserving the right to the earnings from the policies paid for out of the income, would thereby have retained the right to a measure of the income of the trust. But, the trustee was directed to use both income and corpus for the payment of premiums. Therefore, without question, the decedent-settlor could have enjoyed the income from the entire corpus if it had been applied to the payment of premiums.

The fact that no annuity contract or policy of insurance formed a part of the trust estate after petitioner withdrew the Prudential deferred annuity contract on September 15, 1931, and that decedent did not avail himself of the aforementioned methods, inter alia, of requiring the payment of the trust income to himself is not important. Nor is the fact that he actually received the trust income through the exercise of the sole discretion of the trustee as provided for in article one of the trust agreement. The controlling consideration is that the decedent did reserve the right, or the means, to require and receive

payment of the entire trust income to himself for a period which did not end before his death.

Although the point has not been argued by the parties, we observe that the trust agreement, as amended, permits a construction that the decedent did not surrender his right to withdraw policies of insurance from the trust. Under the fourth article, paragraph (c), of the original trust, before the amendment of May 4, 1932, the decedent reserved the right "to withdraw any and all of the *policies, securities* and/or *other properties* subject to the trust." (Emphasis supplied.) Under the amendment of May 4, 1932, the decedent surrendered the "right and power to withdraw any and all of the *securities* and/or *other properties* subject to the trust." (Emphasis supplied.) The right to withdraw policies of insurance was specifically reserved in Four (c) of the trust, dealing with reserved rights of the settlor before the amendment, and that right was not specifically given up by the settlor in the amendment. If the decedent had the right at all times up to the time of his death, as it appears he did have, to withdraw policies of insurance, he thereby reserved the right to revest trust corpus and/or income used to pay insurance premiums, in himself, as well as the right to reacquire and exercise all of the incidents of ownership in the policies, among which would be the powers to change beneficiaries and to surrender the policies for their cash value. These powers, clearly, make the trust includible in the decedent's estate under the provisions of either section 811(c) (1) (B), or section 811(d) of the Code.

The petitioner relies on *Commissioner* v. *Irving Trust Co.*, 147 F. 2d 946, affirming *Estate of Hugh M. Beugler*, 2 T. C. 1052. But that case is readily distinguishable. In *Irving Trust Co.*, *supra*, the deed of trust authorized the corporate trustee, in the exercise of its sole and uncontrolled discretion, to pay over a part of the trust principal to the settlor. But the settlor retained no legally enforceable rights by which he could require the trustee to return any part of the trust corpus. In the instant case, the decedent-settlor had at his command the means by which he could legally enforce the payment of the trust income and principal to himself, which is the determining factor. *Irving Trust Co.*, *supra*.

It is held that the value, as of the date of death, of the corpus of the Arnold Resch trust is includible in the decedent's gross estate. See *Estate of Selznick*, *supra*.

In view of the foregoing it is not necessary for us to consider the respondent's alternative contention that the Arnold Resch trust was created in contemplation of death.

*Issue 2.* It becomes necessary, in view of the above conclusion, for us to determine whether Federal Farm Mortgage Corporation bonds

issued prior to March 1, 1941, and included in the assets of the Arnold Resch trust, should be excluded from the gross estate because of the decedent's status as a nonresident alien not engaged in business in the United States.

The issue arises under section 861(c) [5] of the Internal Revenue Code which was added by section 604(a) of the Revenue Act of 1951 and made effective with respect to estates of decedents dying after February 10, 1939. Section 861(c)(1) of the Code excludes from the gross estate of a nonresident alien not engaged in business in the United States "obligations issued by the United States prior to March 1, 1941."

The petitioner argues that Federal Farm Mortgage Corporation bonds are obligations of the United States and are, therefore, within the exclusionary provisions of section 861(c) of the Code because the bonds are guaranteed as to both interest and principal by the United States. The respondent contends that the bonds are not "obligations issued by the United States," and are not primary obligations of the United States as contemplated by the exempting statute. We agree with the respondent.

In *Estate of Lesley Diana Worthington*, 18 T. C. 796, we held that Federal Land Bank bonds were not obligations issued by the United States and hence were not exempt under section 861(c) of the Code. In *Worthington, supra*, as in the instant case, the bonds were issued by an instrumentality or agency of the United States. However, Federal Farm Mortgage Corporation bonds, unlike Federal Land Bank bonds, are guaranteed both as to principal and interest by the United States, in the event the corporation is unable to make payment. See U. S. C. Title 12, sec. 1020 c. The narrow question here presented, then, is whether the statute exempts bonds of which the United States is the guarantor as distinguished from the primary obligor. We think not. There is nothing in the plain language of the statute, nor in its legislative history,[6] to indicate that Congress, in enacting section 861(c) of the Code, intended to exempt bonds issued by an instrumentality of the United States and merely guaranteed by the United States in the event of default by the issuing corporation. It is well settled that "a statute creating an exemption must be strictly con-

---

[5] SEC. 861. NET ESTATE.

\* \* \* \* \* \* \*

(c) United States Bonds.—For the purposes of subsection (a), the value of the gross estate (determined as provided in section 811) of a decedent who was not engaged in business in the United States at the time of his death—

(1) shall not include obligations issued by the United States prior to March 1, 1941; and

(2) shall include obligations issued by the United States on or after March 1, 1941, but only if the decedent died after the date of the enactment of the Revenue Act of 1951.

[6] See H. Rept. No. 586, 82d Cong., 1st Sess. (1951), p. 139; S. Rept. No. 781, 82d Cong., 1st Sess. (1951), p. 106.

strued and any doubt must be resolved in favor of the taxing power." *Associated Industries of Cleveland*, 7 T.C. 1449, 1464. We are of the opinion that Congress, by section 861(c) of the Code, intended to exempt only primary obligations of the United States.

We hold, therefore, that Federal Farm Mortgage Corporation bonds issued prior to March 1, 1941, are not exempt from tax in the estate of a nonresident alien not engaged in business in the United States under the provisions of section 861(c) of the Code.

*Issue 3.* The remaining issue is whether the noninsurance assets of the trust of June 8, 1931, which was established by an agreement executed by Tottie Resch and with property acquired by gift from the decedent, is includible in the decedent's gross estate. The respondent contends that Tottie Resch was merely the nominal settlor and that the trust was in reality created by the decedent with the consequence that the interest and powers retained were the decedent's. From his premise, respondent argues that the noninsurance assets of the trust are taxable under any one of the following provisions of the Code: (1) under section 811 (c) (1) (A) on the theory that a funded insurance trust is testamentary in nature and hence the transfer in trust was made in contemplation of death; or (2) under section 811 (c) (1) (C) as amended by The Technical Changes Act, since the decedent expressly retained a possibility of reverter having a value in excess of 5 per cent of the trust corpus; or (3) under section 811 (d) (2) since the decedent, at his death, possessed the power, in conjunction with Tottie Resch, to alter or revoke the trust. The petitioner contends that Tottie Resch was in name and in fact the settlor of the trust, and that its creation was her free and untrammeled act; further, that the power granted to the decedent under the trust agreement to control investments and the requirement that his consent be secured in order for Tottie Resch to alter or revoke the trust are fiduciary powers, the possession of which by the decedent does not result in the trust's being taxed in his estate. We agree with the petitioner.

The respondent's arguments are based on the premise that the decedent was in reality the settlor of the Tottie Resch trust. If that premise is invalid, the respondent's case falls. Whether the party executing a trust agreement is the real settlor, or merely a nominal settlor acting in concert with and at the instance of another, is, in each case, a question of fact. It is an inference to be drawn from all the facts and circumstances attendant upon the execution of the agreement. *Estate of John H. Eckhardt*, 5 T. C. 673, 679, 680; *Estate of Grace D. Sinclaire*, 13 T. C. 742, 745. We are satisfied from all the facts and circumstances attending the creation of the trust in question that Tottie Resch was the real settlor, and that its creation was her free and independent act.

The respondent stresses the fact that the gift of bonds by the decedent to his wife was made shortly before the trust was created, and that the decedent on the succeeding day created a trust with similar provisions, and, further, that decedent immediately prior to the execution of the trust agreement by Tottie Resch took out four policies of insurance on his life which were placed in the trust by Tottie Resch.

The evidence establishes, and we have found as a fact, that the gift of bonds by the decedent to his wife was unconditional, and that there was no attendant agreement or understanding between them that the bonds would be used to create the trust. Tottie Resch was free to invest the gift property as she might choose. She sought the investment counsel of an officer of The Chase National Bank and at his suggestion and advice created the trust in question. The suggestion of an insurance trust was, no doubt, prompted by the circumstances of the parties. Tottie Resch was 25 years younger than the decedent. She had no immediate need of income as the decedent was a man of substantial wealth. She thus acquired a wise and sound investment for the future. The fact that Tottie Resch consulted with the decedent and secured his cooperation before executing the agreement does not, in view of the facts, warrant the inference that she was acting at the direction of and in concert with the decedent.

It is significant that section 303 (e) of the Revenue Act of 1926, and corresponding provisions of subsequent acts, exempted from the gross estate of a nonresident alien proceeds of insurance on his life. Because Tottie Resch chose to do through the medium of a trust what she could have done directly without incurring tax consequences tends, also, to weaken the respondent's contention that the decedent was the real settlor of the Tottie Resch trust. *Estate of Grace D. Sinclaire, supra,* relied on by the respondent, is readily distinguishable on the facts from this proceeding. Other authorities cited by the respondent all involve reciprocal trusts. See *Lehman* v. *Commission,* 109 F. 2d 99, certiorari denied 310 U. S. 637. As the provisions of the Arnold Resch and the Tottie Resch trusts were not reciprocal, the rule of the *Lehman* case is not applicable.

The respondent does not contend that the gift of bonds by the decedent to his wife was in contemplation of death. And we have concluded that the trust of June 8, 1931, was created by Tottie Resch. Therefore, the corpus of the Tottie Resch trust is not includible in the decedent's gross estate under the provisions of either section 811 (c) (1) (A), or section 811 (c) (1) (C) of the Code as amended.

Nor is the Tottie Resch trust includible in the decedent's gross estate under the provisions of section 811. (d) (2) of the Code as amended. The fact that the decedent's consent was necessary for an amendment or revocation of the trust by Tottie Resch and that the decedent was given authority to direct, or veto, the purchase or sale

of securities by the trustee, does not amount to a power in the decedent to amend or revoke the trust in conjunction with any other persons within the scope of section 811 (d) (2) of the Code. See *Helvering* v. *Talbott's Estate*, 116 F. 2d 160; *Estate of Clayton William Sherman*, 9 T. C. 594, 597; *Estate of Henry S. Downe*, 2 T. C. 967, 971.

Reviewed by the Court.

*Decision will be entered under Rule 50.*