MARIETTA STEWART, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stewart v. Commissioner
Docket No. 6773-87
United States Tax Court
T.C. Memo 1990-264; 1990 Tax Ct. Memo LEXIS 283; 59 T.C.M. (CCH) 704; T.C.M. (RIA) 90264; May 30, 1990, Filed *283 Decision will be entered for the petitioner. P was married to S throughout the years in issue (1980-1984); they resided in a community property state. S was arrested in May 1983, and then again in April 1984, for manufacturing and distributing methamphetamine. P pled guilty to willfully aiding and abetting a conspiracy, which commenced no later than September 1982, to manufacture and distribute methamphetamine. Respondent reconstructed S's income and determined that for the five years at issue S had gross receipts from illicit drug activities totalling $ 762,652. Respondent averaged this amount over the five-year period and determined that S had gross receipts of $ 152,530 per year from illicit drug activities. Respondent then attributed one-half of such income, or $ 76,265, to P (as her share of the community income), and allowed her a cost of goods sold deduction of $ 5,000 for each year. Respondent presented no evidence as to how he made his determinations. Held, with respect to 1980 and 1981, respondent presented insufficient evidence to support an inference that either P or S was involved in income-producing illegal activities. Respondent's deficiency determinations for such *284 years are arbitrarily derived. Accordingly, respondent bears the burden of going forward with evidence that for 1980 and 1981 P had income in the amount as determined by respondent. Respondent failed to meet his burden for such years. Held further, with respect to 1982, 1983, and 1984, respondent presented sufficient evidence linking P and S to income-producing illegal activities; respondent's deficiency determinations with respect to such years are entitled to a presumption of correctness. P rebutted the presumption of correctness. Held further, respondent's deficiency determinations for 1982, 1983, and 1984 are erroneous. Marietta Stewart, pro se. Andrew Weiss, for the respondent. JACOBS, Judge. JACOBS
*968 MEMORANDUM FINDINGS OF FACT AND OPINION By two notices of deficiency, respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows: Additions to Tax Under Sections
Year
Deficiency
6653(b) [1]
6653(b)(1)
6653(b)(2)
6654(a)
6661(a)
1980
$ 35,831.60
$ 17,916.00
--
--
$ 2,284.00
--
1981
36,073.93
18,037.00
--
--
2,764.00
--
1982
31,886.00
--
$ 15,943.00
* *285 3,104.00
$ 7,971.00
1983
30,471.50
--
15,236.00
*
1,865.00
7,618.00
1984
30,163.85
--
15,082.00
*
1,896.00
7,553.00 Respondent also determined deficiencies in petitioner's self-employment tax as follows: Year
Deficiency
1980
$ 2,098.00
1981
2,072.00
1982
3,029.00
1983
3,338.00
1984
4,222.00
As an alternative to the section 6653(b) additions to tax, in his answer, respondent asserted the following additions to tax: section 6651(a)(1), with respect to all of the years in issue; section 6653(a), with respect to 1980; and section 6653(a)(1) and (2), with respect to 1981 through 1984. After concessions, [2] the issues for decision are whether: (1) respondent's notices of deficiency are entitled to a presumption of correctness; (2) respondent correctly reconstructed petitioner's income for the years at issue; (3) petitioner is liable for self-employment tax; (4) petitioner is entitled to relief from liability for Federal income tax pursuant to section 66(c); (5) petitioner is liable for additions to tax for fraud *969 pursuant to section 6653(b); *286 or, alternatively, (6) petitioner is liable for the addition to tax for failure to file pursuant to section 6651(a)(1) and the additions to tax for negligence pursuant to section 6653(a); (7) petitioner is liable for the addition to tax for failure to make estimated tax payments pursuant to section 6654(a); and (8) petitioner is liable for the addition to tax for substantial understatement of liability pursuant to section 6661(a). FINDINGS OF FACT Petitioner resided in Fresno, California, at the time she filed her petition. She married Richard Stewart (Stewart) in 1961 and was married to him throughout the years at issue. Commencing sometime prior to September 1982, Stewart began to manufacture and distribute methamphetamine, a controlled substance. Stewart conducted his manufacturing operation primarily out of a warehouse in Fresno (the Fresno warehouse) and had at least seven people assisting him in the distribution of the methamphetamine. Stewart was first arrested on May 31, 1983, and *287 then again on April 10, 1984, for manufacturing and distributing methamphetamine and has been incarcerated since his second arrest. A search conducted a day prior to Stewart's first arrest uncovered a fully operational methamphetamine laboratory at the Fresno warehouse and a "small amount" of methamphetamine at petitioner's and Stewart's residence (the residence). At the time of the arrest, Stewart had approximately $ 6,000 in cash in his possession. A search conducted at the time of Stewart's second arrest again uncovered a fully operational methamphetamine laboratory at the Fresno warehouse, as well as a second laboratory in Stewart's van. Stewart's residence was searched and a "small amount" of methamphetamine was found in various locations, including a purse in the master bedroom; petitioner was later seen carrying this purse. Numerous weapons as well as miscellaneous glassware and equipment used in the manufacture of methamphetamine were located in and around the residence. Chemicals for the manufacture of methamphetamine were located in the garage and in an eight-stage methamphetamine laboratory which was in the process of being built in a building at the rear of the residence. *288 At the time of Stewart's second arrest, petitioner and eight other individuals, who were at petitioner's home, were also arrested. Petitioner subsequently pled guilty to willfully aiding and abetting a conspiracy, which commenced no later than September 1982, to manufacture and distribute methamphetamine. She was placed on probation for five years, which was subsequently shortened to two and one-half years. Petitioner was unaware of the amount of money her husband received. They lived modestly; they did not own a house, expensive cars, expensive jewelry, fur coats, or other expensive items. Nor did they take lavish vacations. Petitioner received household money from her husband. Because petitioner and her husband did not have any bank accounts during the years in issue, she paid their bills in cash. She testified that she "did without question what my husband told me to do." Beginning in 1982 Stewart, petitioner, and their six children received food and financial assistance from their church. At the time of Stewart's second arrest, petitioner and her children began to suffer severe financial hardship; the church increased its financial assistance by paying the family's rent and *289 other expenses while petitioner looked for a job. Petitioner located a job in April 1985. At the time of trial, petitioner was earning $ 1,300 per month in her employment and continued to receive assistance from the church. Petitioner assisted her husband in the preparation of their joint returns during the early years of their marriage. Their 1979 return reflected total income of $ 959. In 1980, Stewart told petitioner that paying income tax was voluntary and, beginning with their 1980 tax year, they stopped filing returns. Petitioner completed one year of college during which she took courses in accounting and bookkeeping and worked between 8 to 10 years in a bank. Subsequently, in 1974 and 1975, she worked at the Internal Revenue Service as a data processor, which did not require knowledge of rules or regulations, but simply involved entering figures from returns onto data processors. Petitioner was not employed during the years at issue. She did not receive any dividend income nor did she receive in any one year interest income in excess of $ 10. Petitioner received sales commissions from selling aloe vera, but could not remember the amount earned. Two notices of deficiency, *290 both dated January 21, 1987, were mailed to petitioner. One notice related to 1980, 1981, and 1982; the other related to 1983 and 1984. Respondent reconstructed Stewart's income and determined that for the five years involved (1980-1984), Stewart had gross receipts from illicit drug activities totalling $ 762,652. Respondent then averaged this amount over the five-year period to determine that Stewart's yearly income from illicit drug activities was $ 152,530 ($ 762,652 / 5 = $ 152,530). Respondent then attributed one-half *970 of such income, or $ 76,265, to petitioner and allowed her a cost of goods sold deduction of $ 5,000 for each year. Respondent presented no invoices or other documentary evidence to reveal how he made his determinations. Nor did respondent present any witnesses to describe the methods he followed in making such determinations. After being contacted by one of respondent's agents, petitioner spoke to a friend of hers, an attorney, who suggested that she file returns in her name only. Taking this advice, petitioner filed returns for the years at issue, which show that she received no income and owed no taxes. OPINION Respondent determined that petitioner is *291 taxable on one-half of the amounts which respondent determined were received by Stewart from illegal drug sales in each year at issue. [3] Petitioner contends that the notices of deficiency are not entitled to a presumption of correctness and, further, that the determination set forth in the notices of deficiency are arbitrary and erroneous. In general, respondent's determinations are entitled to *292 a presumption of correctness, and petitioner bears the burden of rebutting that presumption by a preponderance of the evidence. Welch v. Helvering, 290 U.S. 111 (1933); Rockwell v. Commissioner, 512 F.2d 882 (9th Cir. 1975), affg. a Memorandum Opinion of this Court; Rule 142(a). This presumption is procedural in that it transfers to the taxpayer the burden of going forward with the evidence to establish that respondent's determination is incorrect. Jackson v. Commissioner, 73 T.C. 394, 400 (1979). We normally do not look behind a notice of deficiency to examine the evidence used in making the deficiency determination. Crowther v. Commissioner, 269 F.2d 292, 293 (9th Cir. 1959), affg. on this issue 28 T.C. 1293, 1301 (1957); Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). However, where the notice of deficiency is found to be arbitrary, the burden of going forward with the evidence is shifted to respondent. Helvering v. Taylor, 293 U.S. 507 (1935); Weimerskirch v. Commissioner, 596 F.2d 358, 362 (9th Cir. 1979); Suarez v. Commissioner, 58 T.C. 792, 813 (1972), overruled on other grounds United States v. Janis, 428 U.S. 433 (1976). This exception to the general *293 rule has been applied to cases involving unreported income from illegal activities. See Dellacroce v. Commissioner, 83 T.C. 269, 287 (1984); Jackson v. Commissioner, supra at 401-405. The Ninth Circuit Court of Appeals, the court to which appeal lies in this case and the precedents of which we therefore follow, [4] in a case involving the receipt of unreported illegal income, has held that a "deficiency determination which is not supported by the proper foundation of substantive evidence is clearly arbitrary and erroneous." Weimerskirch v. Commissioner, supra. In Weimerskirch, the Commissioner's deficiency determination was based upon his determination that the taxpayer had received unreported income from heroin sales. In making his determination, the Commissioner relied upon statements from two confidential informants and information he obtained from law enforcement officials. No admissible evidence was introduced at trial to substantiate either the statements or information or to otherwise link the taxpayer to the heroin sales. In refusing to sustain respondent's determination, the Ninth Circuit relied heavily on the Supreme Court's conclusion in United States v. Janis, 428 U.S. 433, 441-442 (1976), *294 that without the illegally seized evidence in issue, respondent's determination would be "a 'naked' assessment without any foundation whatsoever" (emphasis in original), and that "an assessment * * * utterly without foundation * * * is arbitrary and erroneous." The Ninth Circuit concluded that respondent could not rely on the presumption of correctness of a deficiency notice "in the absence of a minimal evidentiary foundation" by respondent's showing that the taxpayer received unreported income from an alleged activity, even in the absence of a showing by the taxpayer that the notice was arbitrary. Weimerskirch v. Commissioner, supra at 361. "[I]n order to give effect to the presumption on which the Commissioner relies, some evidence must appear which would support an inference of the taxpayer's involvement in [illegal] * * * activity during the period covered by the assessment." (Emphasis *971 added.) Weimerskirch v. Commissioner, supra at 361; see also Bradford v. Commissioner, 796 F.2d 303, 305 (9th Cir. 1986); Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985); Edwards v. Commissioner, 680 F.2d 1268, 1270 (9th Cir. 1982); *295 Gerardo v. Commissioner, 552 F.2d 549, 552 (3d Cir. 1977). Taxes are levied annually, and each taxable year may be the basis of a separate cause of action. Commissioner v. Sunnen, 333 U.S. 591, 598 (1948); Stamm International Corp. v. Commissioner, 84 T.C. 248 (1985). A notice of deficiency may be valid with respect to certain taxable years, even though, with respect to other taxable years, the notice is invalid. Stamm International Corp. v. Commissioner, supra.
Petitioner claims that prior to May 1983, she was unaware that her husband was engaged in illegal activities. She claims she pled guilty to willfully aiding and abetting her husband in his illegal drug activities as part of a plea bargain which permitted her to remain at home to raise her children, four of whom were minors at the time she pled guilty. She believed his only source of income was from various nondrug-related business activities which were conducted out of their garage and the Fresno warehouse. Petitioner testified that she had been to the Fresno warehouse on several occasions and that she believed the Fresno warehouse was being used to manufacture soap and drying agents for restaurants. According to petitioner, *296 Stewart's drug customers did not come to their house prior to his 1983 arrest. Subsequent to his arrest, when people did come to their house, Stewart would send petitioner away. We observed petitioner as she was testifying and found her to be a credible witness. Accepting the truth of her testimony, with respect to taxable years 1980 and 1981, respondent presented insufficient evidence to support an inference that either petitioner or Stewart was involved in income-producing illegal activities. Because the deficiency determination with respect to 1980 and 1981 is arbitrarily derived, respondent bears the burden of going forward with the evidence that for such years petitioner had income as determined in the deficiency notice; petitioner is not required to prove that she had no such income. Weimerskirch v. Commissioner, supra at 360. Respondent failed to produce any evidence which would enable us to sustain his income determination; he has therefore failed to meet his burden. With respect to 1982, 1983, and 1984, respondent presented ample evidence linking Stewart to the illegal income for such years. Stewart was convicted of manufacturing and distributing methamphetamine pursuant *297 to a conspiracy which commenced no later than September 1982. Petitioner admitted that as of May 1983, she knew her husband was engaged in illegal drug activities. In addition, searches conducted in 1983 and 1984 uncovered fully operational methamphetamine laboratories, including chemicals, equipment, and the finished substance. Therefore, the notices of deficiency with respect to 1982, 1983, and 1984 are entitled to a presumption of correctness, and petitioner bears the burden of proving that respondent's determinations are incorrect. When a taxpayer overcomes the presumption of correctness of the notice of deficiency by competent and relevant evidence, the presumption drops out of the case. Herbert v. Commissioner, supra; J. M. Perry & Co. v. Commissioner , 120 F.2d 123, 124 (9th Cir. 1941). Generally, once the presumption of correctness drops out of the case, the burden of proof (i.e., persuasion) still remains upon the taxpayer. However, the Ninth Circuit Court of Appeals has held that in cases involving unreported income, such as the present case, once the presumption of correctness disappears, the burden of going forward is on respondent. Keogh v. Commissioner, 713 F.2d 496, 501 (9th Cir. 1983); *298 United States v. Stonehill, 702 F.2d 1288, 1294 (9th Cir. 1983), cert. denied 465 U.S. 1079 (1984). Petitioner is not required to show the correct amount of tax owed or the correct income for the years at issue. Helvering v. Taylor, 293 U.S. 507 (1935). Petitioner disputes respondent's income computation from the illegal drug sales. She contends that she and Stewart could not have earned approximately $ 150,000 per year, as determined by respondent in the notice of deficiency. In support of her position, petitioner stated that she and her family were receiving financial assistance from their church. She established that their lifestyle was modest, at best, and that no lavish expenditures had been made. Beginning in 1982, petitioner's church provided food for petitioner, Stewart, and their six children. In 1984, when Stewart was incarcerated, petitioner's financial condition worsened, and she and her children received increased assistance from the church. Accepting the truth of petitioner's testimony, her uncontroverted testimony is sufficient to overcome the presumption of correctness with respect to respondent's income determinations for 1982, 1983, and 1984, as set forth in his *299 notices of deficiency. *972 Having determined that petitioner has rebutted the presumption of correctness, we next must decide whether respondent has met his burden of proving that the determinations set forth in his notices of deficiency were reasonable. A taxpayer is required to maintain records to show whether he is liable for Federal income taxes. Section 6001. In the absence of sufficient books and records, respondent may reconstruct a taxpayer's income by any method which is reasonable. Section 446(b); Holland v. United States, 348 U.S. 121 (1954); Davis v. Commissioner, 239 F.2d 187, 189 (7th Cir. 1956), affg. a Memorandum Opinion of this Court; Cupp v. Commissioner, 65 T.C. 68, 82 (1975), affd. in an unpublished order 559 F.2d 1207 (3d Cir. 1977). Respondent has great latitude in adopting a method for making this determination, and such method need only be reasonable in light of all the surrounding facts and circumstances. Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970); Schroeder v. Commissioner, 40 T.C. 30, 33 (1963). The absence of adequate tax records does not give respondent carte blanche for imposing draconian absolutes, but such absence does weaken any critique of *300 respondent's methodology. Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989), citing Webb v. Commissioner, 394 F.2d 366, 373 (5th Cir. 1968). Nowhere in the Internal Revenue Code is there a provision which specifies the nature and quality of the evidence which respondent must gather to support his determination. Petzoldt v. Commissioner, supra, citing Mayerson v. Commissioner, 47 T.C. 340, 348 (1966). The absence of statutory guidelines suggests that Congress intended that respondent should have great latitude in making determinations of liability, particularly where the taxpayer files no returns and fails to maintain adequate records. Petzoldt v. Commissioner, supra . Over time, respondent has developed several acceptable methods of reconstructing a taxpayer's income, including the following: 1) the net worth method, Holland v. Commissioner, 348 U.S. 121 (1954); Bedeian v. Commissioner, 54 T.C. 295 (1970); 2) the percentage or unit mark-up method, Tunningley v. Commissioner, 22 T.C. 1108 (1954); Stone v. Commissioner, 22 T.C. 893 (1954); 3) the bank deposits and expenditures or sources and application of funds method, Factor v. Commissioner, 281 F.2d 100 (9th Cir. 1960); Kotmair v. Commissioner, 86 T.C. 1253 (1986); *301 and 4) the use of Bureau of Labor Statistics on family income and the Consumer Price Index, Cupp v. Commissioner, supra at 82; Giddio v. Commissioner, supra at 1533. Whatever the method employed, it must be reasonable. Although respondent may very well have employed an acceptable method to reconstruct petitioner's income, he failed to present any evidence whatsoever as to how he determined that petitioner and Stewart received approximately $ 150,000 per year. The wide discretion given to respondent to determine the correct amount of tax owed by a taxpayer who does not keep adequate books and records has never been tantamount to the privilege of arbitrarily selecting a number out of thin air. Here, that appears to be what respondent has done. Finding respondent's deficiency determinations for 1982, 1983, and 1984 to be erroneous, we need not (and shall not) address any of the remaining issues. Decision will be entered for the petitioner. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on the portion of the underpayment which is attributable to fraud.
2. Petitioner conceded that she is not entitled to relief from liability as an "innocent spouse" pursuant to section 6013(e), and respondent conceded that petitioner is entitled to four exemptions.↩
3. Initially, we note that a spouse residing in a community property state has ownership rights in one-half of all of both spouses' community income and generally must report one-half of all such income when he or she files a separate Federal income tax return. United States v. Mitchell, 403 U.S. 190 (1971); United States v. Malcolm, 282 U.S. 792 (1931). This is so regardless of whether such spouse actually receives his or her share of such income. Kimes v. Commissioner, 55 T.C. 774, 782 (1971). To the extent deductible expenses are paid out of community funds or relate to community property, each spouse is entitled to deduct one-half of such expenses. Johnson v. Commissioner, 72 T.C. 340↩ (1979). But see section 280E with respect to expenditures in connection with the illegal sale of drugs.
4. Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985↩ (10th Cir. 1971).