ESTATE OF ETHEL H. KURZ, DECEASED, THE FIRST NATIONAL BANK OF CHICAGO, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 17865–90.            Filed July 21, 1993.

*Michael W. Coffield* and *Clarke C. Robinson,* for petitioner.
*James S. Stanis,* for respondent.

PARKER, *Judge:* Respondent determined a deficiency of $311,570.88 in petitioner's Federal estate tax. Petitioner claims an overpayment in estate tax in the amount of $25,414. The issue is whether, at the time of her death, Ethel H. Kurz (decedent) had a general power of appointment over a portion of a family trust that would cause such portion of the trust to be included in her gross estate under section 2041(a)(2).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

### FINDINGS OF FACT

All of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Ethel H. Kurz (decedent) died on September 16, 1986. The First National Bank of Chicago was appointed executor of her estate by the Probate Division of the Circuit Court of Cook County, Illinois. The executor's principal place of business is in Chicago, Illinois.

Walter C. Kurz (Mr. Kurz), decedent's husband, predeceased her on September 23, 1971. At the time of decedent's death, decedent was a beneficiary of the Walter C. Kurz Insurance Trust, dated November 4, 1959, as restated on June 9, 1971. The trust was divided into two trust funds, the Ethel Hull Kurz Trust Fund (the marital trust fund) and the family trust fund. The trust instrument provided that, during decedent's life following her husband's death, decedent was to receive all of the income from both trust funds and had an unlimited right to demand the entire principal from the marital trust fund. The trust instrument provided that

The trustee also shall pay to * * * [decedent] such amounts without limitation from the principal of the * * * [marital trust fund] as she from time to time may direct by writing filed with the trustee.

The trust instrument also granted decedent the following power over the principal of the family trust fund:

In addition to income, commencing with the first day of January following the tenth anniversary of * * * [Mr. Kurz's] death the trustee also shall pay to * * * [decedent] such amounts from the principal of the family trust fund as she from time to time may direct by writing filed with the trustee, except that (1) no payments shall be made to her pursuant to this subparagraph until the principal of the * * * [marital trust fund] has been completely exhausted, and (2) during any calendar year no payments shall be made to her pursuant to this subparagraph at any time when the aggregate payment or payments theretofore made to her during such calendar year pursuant to this subparagraph equal or exceed five percent of the current value of the principal of the family trust fund then held hereunder and the maximum payment which may be made to her at any other time during such calendar year pursuant to this subparagraph shall not exceed an amount equal to five percent of the current value of the principal of the family trust fund then held hereunder minus the aggregate payment or payments theretofore made to her during such calendar year pursuant to this subparagraph, if any. * * * The rights to withdraw principal of the family trust fund during any given calendar year bestowed upon * * * [decedent] by this subparagraph shall lapse at the end of such year.

The trust instrument also provided that

The interests of the beneficiaries in principal or income shall not be subject in any way to the claims of their creditors or others, and may not be voluntarily or involuntarily alienated or encumbered.

At the time of decedent's death, the marital trust fund had assets with a value of $3,486,406.01, and the family trust fund had assets with a value of $3,378,321.75.

On June 16, 1987, the executor filed a U.S. Estate Tax Return, Form 706, for decedent's estate, petitioner in this case. The estate tax return included 3,965 shares of stock in Lake Shore Bancorp in decedent's gross estate. The parties now agree that the correct number of shares of Lake Shore Bancorp owned by decedent was 2,974 shares. Accordingly, the parties agree that the value of decedent's gross estate as shown on the estate tax return should be reduced by $56,982.50.

The estate tax return included in decedent's gross estate the full value of the marital trust fund but did not include in decedent's gross estate any portion of the value of the family trust fund.

Respondent issued a notice of deficiency determining that, at her death, decedent possessed a general power of appointment over 5 percent of the family trust fund. As a result, respondent determined that 5 percent of the value of the family trust fund ($168,916.09) was includable in decedent's gross estate under section 2041.

OPINION

I. *Section 2041*

Property subject to a power of appointment held by a decedent may be included in such decedent's gross estate under section 2041. Here, section 2041(a)(2) determines whether any property subject to a power of appointment held by decedent that was created by the trust instrument is includable in decedent's gross estate.[1]

The pertinent part of section 2041 provides:

SEC. 2041. POWERS OF APPOINTMENT.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property—

\* \* \* \* \* \* \*

(2) POWERS CREATED AFTER OCTOBER 21, 1942.—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, \* \* \*. For purposes of this paragraph (2), the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised.

Under section 2041(a)(2), decedent's gross estate includes the value of all property to the extent of any property with respect to which decedent had at the time of her death a general power of appointment created under the trust instrument. In order for a power to result in the inclusion of

---

[1] The includability in a decedent's gross estate of property subject to a power of appointment created on or before Oct. 21, 1942, is governed by sec. 2041(a)(1), whereas the includability of property subject to a power created after that date is governed by sec. 2041(a)(2). "A power of appointment created by an inter vivos instrument is considered as created on the date the instrument takes effect." Sec. 20.2041-1(e), Estate Tax Regs. Because the trust instrument creating the family trust fund was dated Nov. 4, 1959, and was restated on June 9, 1971, it necessarily took effect after Oct. 21, 1942.

an item in decedent's gross estate under section 2041(a)(2), decedent must have possessed a power within the definition of a general power of appointment, and decedent must have possessed that power at the time of her death.

## A. *General Power of Appointment*

A "general power of appointment" is defined in section 2041(b)(1), with exceptions not applicable to this case, as "a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate". The power to consume the principal of a trust is a general power of appointment. Sec. 20.2041-1(b)(1), Estate Tax Regs. Therefore, decedent's right to demand principal from the family trust fund constitutes a general power of appointment. The issue, however, is whether the power existed on the date of decedent's death.

## B. *Existence of Power at Decedent's Death*

The regulations provide the following guidance for determining the existence of a power at decedent's death:

For purposes of section 2041(a)(2), a power of appointment is considered to exist on the date of a decedent's death even though the exercise of the power is subject to the precedent giving of notice, or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the decedent's death notice has been given or the power has been exercised. However, a power which by its terms is exercisable only upon the occurrence during the decedent's lifetime of an event or a contingency which did not in fact take place or occur during such time is not a power in existence on the date of the decedent's death. For example, if a decedent was given a general power of appointment exercisable only after he reached a certain age, only if he survived another person, or only if he died without descendants, the power would not be in existence on the date of the decedent's death if the condition precedent to its exercise had not occurred. [Sec. 20.2041-3(b), Estate Tax Regs.]

It is the interpretation and application of this regulation that is the focus of the controversy in this case. Under the trust instrument, decedent could receive up to 5 percent of the principal of the family trust fund in any given year, provided the principal of the marital trust fund had been completely exhausted. At the time of decedent's death, the marital trust fund had assets valued in excess of $3 million.

## II. *Positions of the Parties*

Petitioner argues that, pursuant to section 20.2041-3(b), Estate Tax Regs., because decedent's power to withdraw 5 percent of the principal from the family trust fund was exercisable only upon the occurrence during decedent's lifetime of an event or a contingency (complete exhaustion of the entire principal of the marital trust fund), which did not in fact occur during decedent's lifetime, the power did not exist on the date of decedent's death. Petitioner concludes, therefore, that at the time of her death, decedent did not have a general power of appointment over any portion of the principal of the family trust fund that would be includable in her gross estate. Petitioner takes the position that the express language of section 20.2042-3(b), Estate Tax Regs., excludes from decedent's gross estate property subject to a contingent power unless the event or contingency has in fact occurred, regardless of the substance of the event or contingency.

Respondent takes the position that, because the power of appointment is subject to an event or a contingency within decedent's control, the power existed on the date of decedent's death, even though the event or contingency had not in fact occurred as of that date. Respondent argues that, because at the time of decedent's death decedent had the power to exhaust the principal of the marital trust fund, she could control the occurrence of the event or the contingency placed on her right to receive 5 percent of the principal of the family trust fund. Therefore, respondent concludes, on the date of decedent's death, decedent had a general power of appointment over 5 percent of the principal of the family trust fund, causing that portion of the fund to be includable in her gross estate. Respondent takes the position that property subject to any contingent power otherwise includable under section 2041 is includable in a decedent's gross estate unless the event or contingency is beyond the decedent's control.

While we think respondent's interpretation is too broad, we also think petitioner's interpretation is too narrow. This is essentially an issue of first impression. There are no cases that address this issue. However, respondent contends that the legislative history, the text, and the regulations under section 2041 support her position and require that any

contingent power otherwise includable under section 2041 be included in a decedent's estate, unless the event or contingency was beyond the decedent's control.

## III. *Legislative History of Section 2041*

In 1916, a decedent's gross estate was defined to include all property:

To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate. [Revenue Act of 1916, ch. 463, tit. II, sec. 202(a), 39 Stat. 777.]

Although the 1916 statute did not specifically include any reference to powers of appointment, T.D. 2477, 19 Treas. Dec. Int. Rev. 84 (1917), announced that "where a decedent exercises a general power of appointment as donee under the will of a prior decedent the property so passing is a portion of the gross estate of the decedent appointor" and that property transferred by a special or limited power of appointment also may be included under certain unspecified circumstances. However, in *United States v. Field,* 255 U.S. 257, 263 (1921), the Supreme Court held that the existence of a power of appointment did not of itself vest any estate in the donee. Because such an interest was not Mrs. Field's property at the time of her death, nor subject to distribution as part of her estate, the Supreme Court held that it was not taxable under the 1916 statute. *Id.* at 264.

In the Revenue Act of 1918, Congress modified the definition of the gross estate specifically to include all property subject to the following powers of appointment:

To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, or (2) by deed executed in contemplation of, or intended to take effect in possession or enjoyment at or after, his death, except in case of a bona fide sale for a fair consideration in money or money's worth * * * [Revenue Act of 1918, ch. 18, tit. IV, sec. 402(e), 40 Stat. 1097.]

Congress included such property in a decedent's gross estate for the following reasons:

A person having a general power of appointment is, with respect to disposition of the property at his death, in a position not unlike that of its

owner. The possessor of the power has full authority to dispose of the property at his death, and there seems to be no reason why the privilege which he exercises should not be taxed in the same degree as other property over which he exercises the same authority. The absence of a provision including property transferred by power of appointment makes it possible, by resorting to the creation of such a power, to effect two transfers of an estate with the payment of only one tax. [H. Rept. 767, 65th Cong., 2d Sess. (1918), 1939-1 C.B. (Part 2) 86, 101.]

The 1918 provision was later codified as section 811(f) of the Internal Revenue Code of 1939 (the 1939 Code).

Under section 811(f) of the 1939 Code, such property was subject to the estate tax only if (1) the decedent's power of appointment was general, (2) the power was in fact exercised, and (3) the appointive property passed as a result of the decedent's exercise of the power. *Estate of Alperstein v. Commissioner,* 613 F.2d 1213, 1216 (2d Cir. 1979), affg. 71 T.C. 351 (1978). Under section 811(f) of the 1939 Code, estate tax could be avoided "either through deliberately failing to exercise a general power of appointment (in effect, retaining the power to choose other appointees by deciding in favor of the takers-in-default) or through eluding court-fashioned definitions of 'general' powers of appointment with the aid of minor restrictions that transmuted a general power into an exempt 'special' power." *Estate of Alperstein v. Commissioner, supra* at 1216.

In response to such estate tax avoidance, Congress revised section 811(f) of the 1939 Code by section 403(a) of the Revenue Act of 1942, ch. 619, tit. IV, 56 Stat. 942.[2] As revised,

---

[2] Sec. 403(a) of the Revenue Act of 1942, ch. 619, tit. IV, 56 Stat. 942, provided as follows:

(a) General Rule.—Section 811(f) (relating to powers of appointment) is amended to read as follows:

(f) Powers of Appointment.—

"(1) In general.—To the extent of any property (A) with respect to which the decedent has at the time of his death a power of appointment, or (B) with respect to which he has at any time exercised or released a power of appointment in contemplation of death, or (C) with respect to which he has at any time exercised or released a power of appointment by a disposition intended to take effect in possession or enjoyment at or after his death, or by a disposition under which he has retained for his life or any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth.

"(2) Definition of power of appointment.—For the purposes of this subsection the term 'power of appointment' means any power to appoint exercisable by the decedent either alone or in conjunction with any person, except

"(A) a power to appoint within a class which does not include any others than the spouse of

section 811(f) included in a decedent's gross estate property subject to most powers of appointment, general and special, whether exercised or not.

The House report to the Revenue Act of 1942 indicated that a power of appointment was "authority to do some act in relation to property which the owner, granting such power, might himself do"; "general" powers could be exercised generally in favor of any person whom the appointer chose, as distinguished from "special" or "limited" powers which could be exercised only "in favor of specific objects". H. Rept. 2333, 77th Cong., 1st Sess. (1942), 1942-2 C.B. 372, 417.

The Senate report stated that a power of appointment includes "all powers which are in substance and effect powers of appointment regardless of the nomenclature used in creating the power and local property law connotations." S. Rept. 1631, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 504, 674. The Senate report indicated that such powers include "powers to appoint, exercisable only during the decedent's lifetime and terminable at his death. A power of appointment is deemed to exist at the date of the decedent's death where the time for the exercise of the power is determined by the date of his death." S. Rept. 1631, *supra*, 1942-2 C.B. at 674-675.

Because of public dissatisfaction with various features of the new law, particularly in regard to pre-1942 powers, Congress granted numerous extensions to their effective date.

the decedent, spouse of the creator of the power, descendants of the decedent or his spouse, descendants (other than the decedent) of the creator of the power or his spouse, spouses of such descendants, donees described in section 812 (d), and donees described in section 861 (a) (3). As used in this subparagraph, the term 'descendant' includes adopted and illegitimate descendants, and the term 'spouse' includes former spouse; and

"(B) a power to appoint within a restricted class if the decedent did not receive any beneficial interest, vested or contingent, in the property from the creator of the power or thereafter acquire any such interest, and if the power is not exercisable to any extent for the benefit of the decedent, his estate, his creditors, or the creditors of his estate.

If a power to appoint is exercised by creating another power to appoint, such first power shall not be considered excepted under subparagraph (A) or (B) from the definition of power of appointment to the extent of the value of the property subject to such second power to appoint. For the purposes of the preceding sentence the value of the property subject to such second power to appoint shall be its value unreduced by any precedent or subsequent interest not subject to such power to appoint.

"(3) Date of existence of power.—For the purposes of this subsection the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised."

Finally, because the 1942 statute was viewed as artificial and complicated to apply, Congress revised the statute by the Powers of Appointment Act of 1951, ch. 165, sec. 2, 65 Stat. 91, effective as if contained in the Revenue Act of 1942. As revised by the 1951 Act, section 811(f) of the 1939 Code was changed to read substantially as the current section 2041 reads.

For powers of appointment created after October 21, 1942, the possession of a general power of appointment is subjected to the estate tax, whether or not the power is exercised, and the exercise or release of such power during the holder's life is subjected to the gift tax. For the first time, the statute defined a general power of appointment as a power that is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate. A general power of appointment includes a general beneficial power to appoint by will and includes certain rights to consume principal. S. Rept. 382, 82d Cong., 1st Sess. 1530, 1531 (1951).

## IV. *The Language of Section 2041*

Respondent argues that Congress intended that powers of appointment be considered to exist even where the holder of the power is required to perform an act prior to the exercise of the power. Respondent contends that Congress did not intend section 2041 to be avoided by the use of conditions or contingencies within the control of the holder of the power.

In support of that position, respondent cites the last sentence in section 2041(a)(2), which provides that

For purposes of this paragraph (2), the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised.

This precedent-notice or period-of-delay statutory language was first applied to powers of appointment by section 403(a)(3) of the Revenue Act of 1942,[3] but similar language

---

/3 Sec. 403(a)(3) of the Revenue Act of 1942 reads as follows:

(3) Date of Existence of Power.—For the purposes of this subsection the power of appointment shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes

had previously been used in other estate tax provisions. The language was taken from the then-existing section 811(d) of the 1939 Code (predecessor to current section 2038). Section 811(d) (now section 2038) determined whether property that a decedent had previously transferred was to be included in the decedent's estate because at the date of his death he had the power to alter, amend, or terminate the beneficial enjoyment of the property (retained powers). The precedent-notice or period-of-delay language was first introduced into section 811(d) of the 1939 Code by section 401 of the Revenue Act of 1934, ch. 277, tit. II, 48 Stat. 752. The Revenue Act of 1934 also applied a similar precedent-notice or period-of-delay provision for determining whether income from a trust should be taxable to the grantor of the trust. The conference report explained the purpose of the grantor provision as follows:

Under existing law, the income from a revocable trust is taxable to the grantor only where such grantor (or a person not having a substantial adverse interest in the trust) has the power within the taxable year to revest in the grantor title to any part of the corpus of the trust. Under the terms of some trusts, the power to revoke can not be exercised within the taxable year, except upon advance notice delivered to the trustee during the preceding taxable year. If this notice is not given within the preceding taxable year, the courts have held that the grantor is not required under existing law to include the trust income for the taxable year in his return. The Senate amendments require the income from trusts of this type to be reported by the grantor. The House recedes. [Conf. Rept. 1385, 73d Cong., 2d Sess. (1934), 1939-1 C.B. (Part 2) 634.]

The Senate and House reports also explained the inclusion of the same precedent-notice or period-of-delay language with regard to application of the Federal estate tax to retained interests:

This section amends section 302(d) of the Revenue Act of 1926 relating to the inclusion in the gross estate of a decedent of property transferred by him but as to which he retains the right to alter, amend, or revoke. In such cases the decedent is for practical purposes the owner of the property which under existing law is required to be included in his gross estate. For example, where A transferred property to a trustee but retained the right at any time to alter, amend, or revoke the trust, there is no question as to the includibility of the property in A's gross estate. However, if the

---

effect only on the expiration of a stated period after the exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised.

This language was carried over unchanged to what is now the last sentence of sec. 2041(a)(2).

retained right to alter, amend, or revoke could be exercised only after a precedent notice of, say, a year, or if the alteration, amendment, or revocation would become effective only after a lapse of time after A performed the act which gave rise to the alteration, amendment, or revocation, it might be contended that under existing law the property is not includible in the decedent's gross estate. While it is believed that such contention would not be sound, it is desirable to clarify the law by providing specifically that there must be included in the gross estate all the property of which the decedent at the date of his death had practical, if not technical, ownership. This section further expressly provides that, although a notice may be required as a condition precedent to exercising the right to alter, amend, or revoke, nevertheless the full value of the property at the date of the decedent's death must be included in the gross estate, less only the outstanding estate (measured by the period required to elapse between the giving of the notice and the taking effect of any alteration, amendment, or revocation) which at the decedent's death is irrevocably beyond his control. [S. Rept. 558, 73d Cong., 2d Sess. (1934), 1939-1 C.B. (Part 2) 620; H. Rept. 704, 73d Cong. 2d Sess. (1934), 1939-1 C.B. (Part 2) 581.]

This legislative history clearly indicates that Congress intended to eliminate what it considered an abusive technique for avoiding the application of certain taxes; i.e., by the use of minor restrictions that did not affect the decedent's "practical, if not technical, ownership" of the property. However, we can find nothing in the legislative history, or the language of the statute, that would indicate that Congress equated this precedent-notice or period-of-delay language with a broad proscription against all conditions precedent within the control of a decedent. When Congress applied this language to retained powers in 1934 and again when it enacted the Revenue Act of 1942 and the Powers of Appointment Act in 1951, applying this same language to powers of appointment, it was aware of the potential for abuse through the use of minor notice or timing conditions placed on such powers. The legislative history clearly indicates that all property of which decedent on the date of her death had practical ownership is to be included in her estate. See H. Rept. 767, 65th Cong., 2d Sess. (1918), 1939-1 C.B. (Part 2) 86, 101. Therefore, an event or a contingency should be such that it prevents or avoids practical ownership of the property.

V. *The Language of the Estate Tax Regulations*

Both parties argue that their positions are supported by section 20.2041-3(b), Estate Tax Regs., which defines when a power of appointment is considered to exist on the date of a

decedent's death. That regulation begins with a restatement of the statutory precedent-notice or period-of-delay language. In support of its position that the event or contingency must in fact occur, petitioner cites the language of section 20.2041-3(b), Estate Tax Regs., that immediately follows:

However, a power which by its terms is exercisable only upon the occurrence during the decedent's lifetime of an event or a contingency which did not in fact take place or occur during such time is not a power in existence on the date of the decedent's death. * * *

Respondent asserts that the examples immediately following the above-quoted regulation language support her position that the event or contingency must be beyond the decedent's control:

For example, if a decedent was given a general power of appointment exercisable only after he reached a certain age, only if he survived another person, or only if he died without descendants, the power would not be in existence on the date of the decedent's death if the condition precedent to its exercise had not occurred. [Sec. 20.2041-3(b), Estate Tax Regs.]

Respondent reasons that, because all the conditions in the examples are beyond the decedent's control, the regulation was intended to apply only to such contingencies. A review of the evolution of the regulation does not support respondent's overly broad interpretation.

The regulation (sec. 20.2041-3(b), Estate Tax Regs.) was promulgated by T.D. 6296, 1958-2 C.B. 432, 527. In that same Treasury decision, respondent promulgated section 20.2038-1(b), Estate Tax Regs., applicable to retained powers and determining whether a power to alter, amend, or revoke exists on a decedent's date of death. T.D. 6296, 1958-2 C.B. at 507. Section 20.2038-1(b), Estate Tax Regs., provides as follows:

(b) *Date of existence of power.* A power to alter, amend, revoke, or terminate will be considered to have existed at the date of the decedent's death even though the exercise of the power was subject to a precedent giving of notice or even though the alteration, amendment, revocation, or termination would have taken effect only on the expiration of a stated period after the exercise of the power, whether or not on or before the date of the decedent's death notice had been given or the power had been exercised. In determining the value of the gross estate in such cases, the full value of the property transferred subject to the power is discounted for the period required to elapse between the date of the decedent's death and the

date upon which the alteration, amendment, revocation, or termination could take effect. * * * However, section 2038 is not applicable to a power the exercise of which was subject to a contingency *beyond the decedent's control* which did not occur before his death (e.g., the death of another person during the decedent's life). * * * [Emphasis added.]

Prior to the issuance of T.D. 6296, *supra,* the regulation applicable to retained powers provided that a power to alter, amend, revoke, or terminate was considered to exist on the date of a decedent's death even though "the exercise of the power was restricted to a particular time which had not arrived, or the happening of a particular event which had not occurred, at decedent's death". Sec. 81.20, Regs. 105 (1956). T.D. 6296 specifically considered and changed the standard to exclude from a decedent's gross estate retained powers subject to a contingency beyond the decedent's control.

T.D. 6296, *supra,* also revised the regulation applicable to powers of appointment to specifically address contingent powers which were not addressed in the prior regulation applicable to powers of appointment. The prior regulation provided in part:

For purposes of section 811(f)(2), a power of appointment is considered to exist on the date of the decedent's death where the time for the exercise of the power is determined by the date of his death. It is also considered to exist on the date of the decedent's death even though the exercise of the power is subject to the precedent giving of notice, or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the decedent's death notice has been given or the power has been exercised. [Sec. 81.24(b)(2)(i)(a), Regs. 105 (1956).]

In 1958, T.D. 6296, *supra,* included the language "beyond the decedent's control" in section 20.2038-1(b), Estate Tax Regs., with regard to retained powers. In contrast, although the regulations are otherwise similar, T.D. 6296 did not include the words "beyond the decedent's control" in section 20.2041-3(b), Estate Tax Regs., with regard to powers of appointment. There is no indication that the omission was inadvertent.

Furthermore, we think that the omission is reasonable, and that different treatment for a power of appointment as opposed to a retained power is warranted. In order for a decedent to remove from his gross estate for Federal estate tax purposes property that he previously owned and has

transferred, a decedent must place such property irrevocably beyond his control. *Commissioner v. Estate of Holmes,* 326 U.S. 480, 487 (1946). In such cases, retaining a small amount of control will cause the property to remain in the decedent's estate. In contrast, a decedent must be granted a greater amount of control or power over property not previously owned by the decedent before that property becomes includable in his gross estate.

This difference is reflected in the general application of sections 2038 and 2041. For example, a decedent who transfers property to a trust, retaining the right to appoint such property among his children, but not to himself, his estate, his creditors, or creditors of his estate, is required to include the entire property in his gross estate under section 2038. *Estate of Porter v. Commissioner,* 288 U.S. 436, 443 (1933). On the other hand, if another person grants the decedent the same power over property that the decedent did not previously own, the property is not included in the decedent's gross estate under either section 2038 or section 2041. *Estate of Resch v. Commissioner,* 20 T.C. 171, 183 (1953); sec. 20.2041-1(c)(1)(b), Estate Tax Regs.

The regulations under these two sections reflect this difference. Under the language of section 20.2038-1(b), Estate Tax Regs., any contingency must be "beyond the decedent's control" before it will serve to keep retained-powers property out of a decedent's estate. Under the language of section 20.2041-3(b), Estate Tax Regs., there is no requirement that the contingency be "beyond the decedent's control".

Neither the statute (last sentence of section 2041(a)(2)) nor the pertinent regulation (section 20.2041-3(b), Estate Tax Regs.) expressly requires that the event or contingency be "beyond the decedent's control". We are not persuaded by respondent's efforts to construct such a requirement from bits and pieces of other regulations either defining a type of power of appointment [4] or governing retained powers (section

---

[4] Respondent also argues that her position is supported by sec. 20.2041-1(b)(1), Estate Tax Regs., which provides in part:

A power in a donee to remove or discharge a trustee and appoint himself may be a power of appointment. For example, if under the terms of a trust instrument, the trustee or his successor has the power to appoint the principal of the trust for the benefit of individuals including himself, and the decedent has the unrestricted power to remove or discharge the trustee at any time and appoint any other person including himself, the decedent is considered as having a power of appointment. * * *

2038) rather than powers of appointment (section 2041). Since respondent added such a requirement to the retained-powers regulation (section 20.2038-1(b), Estate Tax Regs.) and at the same time failed to include that language in the powers-of-appointment regulation (section 20.2041-3(b), Estate Tax Regs.), we decline to engraft this language into the regulation.

Petitioner argues that, pursuant to section 20.2041-3(b), Estate Tax Regs., because decedent's power to withdraw 5 percent of the principal from the family trust fund was exercisable only upon the occurrence during decedent's lifetime of an event or a contingency (complete exhaustion of the entire principal of the marital trust fund), which did not in fact occur during decedent's lifetime, the power did not exist on the date of decedent's death. Petitioner argues that the regulation requires that a condition precedent cannot be deemed to have occurred but must have in fact occurred. Petitioner concludes, therefore, that at the time of her death, decedent did not have a general power of appointment over any portion of the principal of the family trust fund that would be includable in her gross estate.

Respondent counters that petitioner's interpretation of the regulation is overly broad and "does violence to the intent of the statute". We agree, but we do not accept respondent's own overbroad view that whether the event or contingency is beyond the control of the decedent is the determinative factor.

However, although we decline to read into the statute a requirement that the event or contingency must necessarily be beyond a decedent's control, the event or contingency must not be illusory and must have some significant nontax consequence independent of the decedent's ability to exercise the power. The legislative history, however, clearly indicates

Respondent argues that the regulation attributes a general power to a decedent, even though the decedent would have been required to remove the trustee and substitute himself before he could exercise his power. Respondent thus concludes that the "regulations make clear, however, that a decedent possesses, for purposes of I.R.C. § 2041, a power of appointment notwithstanding the failure by a decedent to perform an act necessary to exercise the power if the decedent had the power to perform that act."

However, the above-quoted regulation language merely defines a particular type of general power of appointment. The particular type of general power of appointment involved in this case is the power to consume principal. There is no question that that is a general power of appointment. The only question in this case is whether that power was in existence at the time of decedent's death.

that all property of which the decedent on the date of his death had practical, if not technical, ownership is to be included in his estate. We think any illusory or sham restriction placed on a power of appointment should be ignored. An event or condition that has no significant nontax consequence independent of a decedent's power to appoint the property for his own benefit is illusory. For example, for purposes of section 2038, a power is disregarded if it becomes operational as a mere byproduct of an event, the nontax consequences of which greatly overshadow its significance for tax purposes. See Bittker & Lokken, Federal Taxation of Income, Estates and Gifts, par. 126.5.4, at 126-64 (2d ed. 1984). If the power involves acts of "independent significance", whose effect on the trust is "incidental and collateral", such acts are also deemed to be beyond the decedent's control. See Rev. Rul. 80-255, 1980-2 C.B. 272 (power to bear or adopt children involves act of "independent significance", whose effect on a trust that included after-born and after-adopted children was "incidental and collateral"); see also *Estate of Tully v. United States,* 208 Ct. Cl. 596, 528 F.2d 1401, 1406 (1976) ("In reality, a man might divorce his wife, but to assume that he would fight through an entire divorce process merely to alter employee death benefits approaches the absurd."). Thus, if a power is contingent upon an event of substantial independent consequence that the decedent could, but did not, bring about, the event is deemed to be beyond the decedent's control for purposes of section 2038.

We do not think that, where the general power of appointment is the right to withdraw principal from a trust, Congress intended that application of section 2041(a)(2) could be avoided by stacking or ordering the withdrawal powers; i.e., exercising the power to withdraw a certain number of dollars before the power to withdraw the next portion comes into operation. A condition that has no significant nontax consequence independent of a decedent's power to appoint the property for her own benefit does not prevent practical ownership; it is illusory and should be ignored. We conclude that for purposes of section 2041, although the condition does not have to be beyond the decedent's control, it must have some significant nontax consequence independent of the decedent's power to appoint the property. Petitioner has not demonstrated that withdrawing principal from the marital

trust fund has any significant nontax consequence independent of decedent's power to withdraw principal from the family trust fund. Such condition is illusory and, thus, is not an event or a contingency contemplated by section 20.2041-3(b), Estate Tax Regs.

We hold that, if by its terms a general power of appointment is exercisable only upon the occurrence during the decedent's lifetime of an event or contingency that has no significant nontax consequence independent of the decedent's ability to exercise the power, the power exists on the date of decedent's death, regardless of whether the event or contingency did in fact occur during such time. Because petitioner has failed to demonstrate any significant nontax consequence independent of decedent's right to withdraw principal from the family trust fund, we hold that, on the date of her death, decedent had a general power of appointment over 5 percent of the family trust fund that causes that portion to be includable in her estate under section 2041.

Decedent's power of appointment over 5 percent of the family trust fund was in existence on the date of her death regardless of the fact that the principal of the marital trust fund had not been completely exhausted by that date. Hence, 5 percent of the family trust fund was includable in her gross estate.

To reflect the parties' stipulations and the above holding,

*Decision will be entered under Rule 155.*