T.C. Memo. 1996-471


UNITED STATES TAX COURT


ESTATE OF MYRTLE V. DIETZ, DECEASED,
EDWARD A. DIETZ, III, EXECUTOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10326-95.                    Filed October 21, 1996.


John Chalk, Jr. and John W. Michener, Jr., for petitioner.

James W. Lessis, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

PARKER, Judge:  Respondent determined a deficiency of

$24,634.19 in the Federal estate tax of the Estate of Myrtle V.

Dietz (the estate).

Unless otherwise indicated, all section references are to

the Internal Revenue Code in effect for the date of decedent's

death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issue for decision is whether Myrtle V. Dietz possessed at her death a general power of appointment over the Edward A. Dietz Trust that requires inclusion in decedent's gross estate under section 2041(a)(2) of $67,458.50, representing 5 percent of the value of the trust on the date of decedent's death.

## FINDINGS OF FACT

This case has been submitted fully stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Myrtle V. Dietz (decedent) resided in Fort Worth, Texas, at the time of her death on July 12, 1992. Edward A. Dietz III (the executor) was granted letters testamentary by the Probate Court in Tarrant County, Texas, on August 10, 1992. The executor resided in Fort Worth, Texas, at the time the petition was filed.

Decedent was married to Edward A. Dietz (Mr. Dietz) from June 1926 until his death on November 22, 1975. They had two children during their marriage: Edward A. Dietz, Jr. (Edward Jr.), who was born May 9, 1931, and died February 11, 1990; and Virginia M. Dietz Wallace (Virginia), who was born January 26, 1928, and died December 24, 1993.

Edward Jr. was married to Barbara Stratton Dietz from

May 30, 1953, until his death.  Edward Jr. and his wife had five children during their marriage, all of whom are still living: Edward A. Dietz III,[1] born May 21, 1954; Diane Dietz Stocker, born September 26, 1955; Debbie Dietz, born December 1, 1956; Dixie Dietz Crow, born May 20, 1959; and Danni Dietz Lougee, born October 18, 1960.

Virginia was married to Charles E. Wallace on September 4, 1946.  They had four children during their marriage, all of whom are still living:  C.E. Wallace III, born June 30, 1948; Marsha Wallace Mills, born December 31, 1949; Carter Wallace, born July 27, 1951; and David C. Wallace, born July 5, 1954.

Mr. Dietz executed his last will and testament (the will) on January 25, 1973.  The will provided that the residue of his estate fund the Edward A. Dietz Trust (the trust) for the benefit of decedent, their children, and their grandchildren.  Article 5 of the will contained provisions for distributions from the trust.  Section 5.1 of the will provided that, during the life of decedent, the trustee, after taking into account other funds of decedent, had the discretion to distribute to decedent so much of the trust's net income and principal which the trustee deemed necessary for the "care, support and maintenance, hospital and medical needs and expenses of invalidism" of decedent.  Section 5.2  of the will gave the trustee discretion to sprinkle net

---

[1] Edward A. Dietz III is the executor of decedent's estate.

income and principal to the children and grandchildren of Mr. Dietz for their "care, support and maintenance, hospital and medical needs and education."  Section 5.3 of the will stated the following:

> Any other provision hereof to the contrary notwithstanding, my said wife shall have, so long as she shall live, the absolute right to withdraw from the principal of the trust, each calendar year, any amount, in cash or in kind, not in excess of Five Thousand Dollars ($5,000.00) or five percent (5%) of the then value of the principal of the trust, whichever amount is greater.  Said right to withdraw such amount shall be noncumulative, however, and if in any such year my said wife shall fail to withdraw all of such amount she shall not be entitled in any subsequent year to withdraw such amount as she failed to withdraw in any prior year.  The sums, if any, actually withdrawn from the trust by my said wife pursuant to this authorization therefor shall be in addition to and not in lieu of any discretionary payments to her by the Trustee hereunder and need not be taken into account by the Trustee in determining my wife's need for such discretionary payments.

After the death of Mr. Dietz, the trust was established pursuant to the provisions of his will.  At no time prior to decedent's death did she exercise her rights under section 5.3.  At decedent's death, the fair market value of the principal of the trust was $1,349,170.02.

On April 14, 1993, the executor filed a Federal estate tax return for decedent's estate.  On March 16, 1995, respondent issued a notice of deficiency to the estate, determining a deficiency in estate tax of $24,634.19.  Respondent increased the gross estate by the amount of $67,458.50, which is equal to 5

percent of $1,349,170.02, the fair market value of the principal

of the trust on the date of decedent's death.

OPINION

Section 2041(a)(2) requires that the value of a decedent's

gross estate include the value of all property--

> To the extent of any property with respect to which the
> decedent has at the time of his death a general power
> of appointment created after October 21, 1942, or with
> respect to which the decedent has at any time exercised
> or released such a power of appointment by a
> disposition which is of such nature that if it were a
> transfer of property owned by the decedent, such
> property would be includible in the decedent's gross
> estate under sections 2035 to 2038, inclusive.  For
> purposes of this paragraph (2), the power of
> appointment shall be considered to exist on the date of
> the decedent's death even though the exercise of the
> power is subject to a precedent giving of notice or
> even though the exercise of the power takes effect only
> on the expiration of a stated period after its
> exercise, whether or not on or before the date of the
> decedent's death notice has been given or the power has
> been exercised.

Sec. 2041(a)(2).  Section 2041(b)(1) defines a general power of

appointment, with exceptions not applicable to this case, as "a

power which is exercisable in favor of the decedent, his estate,

his creditors, or the creditors of his estate".  The power to

consume the principal of the trust is a power of appointment.

Sec. 20.2041-1(b), Estate Tax Regs.  The possession of a general

power of appointment is subjected to the estate tax, whether or

not the power is exercised, and the exercise or release of such

power during the holder's life is subjected to the gift tax.

Estate of Kurz v. Commissioner, 101 T.C. 44, 53 (1993),

supplemented and reconsideration denied T.C. Memo. 1994-221, affd. 68 F.3d 1027 (7th Cir. 1995). The lapse of such a power during the lifetime of the person possessing the power is considered a release of the power. In regard to the lapse of such a power, section 2041(b)(2) provides:

> The lapse of a power of appointment created after October 21, 1942, during the life of the individual possessing the power shall be considered a release of such power. The preceding sentence shall apply with respect to the lapse of powers during any calendar year only to the extent that the property, which could have been appointed by exercise of such lapsed powers, exceeded in value, at the time of such lapse, the greater of the following amounts:
>
> > (A) $5,000, or
> >
> > (B) 5 percent of the aggregate value, at the time of such lapse, of the assets out of which, or the proceeds of which, the exercise of the lapsed powers could have been satisfied.

Decedent had the right to withdraw funds from the principal of the trust. This power to consume in favor of decedent herself was a general power of appointment. Decedent never exercised her power. Decedent's right to withdraw was noncumulative, and thus her failure to exercise her right by the end of each calendar year prior to her death was a lapse of the power over the amount available to her for that year. As the amounts over which decedent's power lapsed each year before the year of her death did not exceed those specified in section 2041(b)(2), those

amounts were not subjected to the gift tax during her life nor required to be included in her gross estate upon her death.[2]

It is the treatment of the amount over which decedent possessed the power during the year of her death (the final year's amount) that is at issue.  It is respondent's position that decedent's power had not lapsed at the time of her death, making the exception under section 2041(b)(2) of the greater of $5,000 or 5 percent of the value of assets (the section 2041(b)(2) exception) unavailable, and thereby subjecting the final year's amount to the general rule of inclusion under section 2041(a)(2).

It is the estate's position that the section 2041(b)(2) exception extends to the final year's amount.  The estate argues that the example given in section 20.2041-3(d)(3), Estate Tax Regs., is inconsistent with the language of section 2041(b)(2). The estate also argues that the section 2041(b)(2) exception was designed as a de minimis exception and that to include the final year's amount in decedent's gross estate would defeat the purpose of that section.  Further, the estate argues that the final year's amount should not be included because the estate has no dominion or control over the trust property.

---

[2] Sec. 2514(e) contains a similar provision for purposes of gift tax.

Throughout the estate's brief, the estate speaks of section 2041(b)(2) applying to lapsed powers in all years, including those in the year of a taxpayer's death.  The estate cites <u>Estate of Noland v. Commissioner</u>, T.C. Memo. 1984-209, for this proposition.  We agree that section 2041(b)(2) applies to <u>lapsed</u> powers in all years.  Our holding in <u>Estate of Noland v. Commissioner</u> is in accordance with that.  In that case we held that "under section 2041(b)(2), the amount includible in the gross estate in this case for each of the years 1973 through 1978 is limited to the amount, if any, by which the <u>lapsed</u> portion of the power exceeded $5,000."[3]  <u>Id.</u>  (Emphasis added.)  What the estate fails to grasp in the instant case is that, at the time of decedent's death on July 12, 1992, her power over the final year's amount had not yet lapsed.

<u>Section 20.2041-3(d)(3), Estate Tax Regs.</u>

Respondent's treatment of the final year's amount follows an example given in section 20.2041-3(d)(3), Estate Tax Regs., which the estate says is inconsistent with section 2041(b)(2).  That example reads:

> For example, assume that A transferred $200,000 worth of securities in trust providing for payment of income

_____

[3] In that case the year of decedent's death was 1978, and respondent did not determine any deficiency in estate tax (nor seek any increased deficiency from the Tax Court) in regard to the 1978 amount that had not lapsed at the time of her death in 1978.  Thus we did not directly address the issue that is presented in the instant case.

> to B for life with remainder to B's issue.  Assume
> further that B was given a non-cumulative right to
> withdraw $10,000 a year from the principal of the trust
> fund * * * .  In such case, the failure of B to
> exercise his right of withdrawal will not result in
> estate tax with respect to the power to withdraw
> $10,000 which lapses each year before the year of B's
> death.  At B's death there will be included in his
> gross estate the $10,000 which he was entitled to
> withdraw for the year in which his death occurs less
> any amount which he may have taken during that year.  *
> * *

Sec. 20.2041-3(d)(3), Estate Tax Regs.

The above example is taken directly from the Senate Report

on the Powers of Appointment Act of 1951, ch. 165, sec. 2, 65

Stat. 91.  See S. Rept. 382, 82d Cong., 1st Sess. (1951),

reprinted in 1951 U.S.Code Cong. & Admin. News (U.S.C.C.A.N.)

1530.  With respect to then proposed new section 811(f)(5), which

in substance is identical to current section 2041(b)(2), the

Senate report stated:

> The House bill provided that the failure to exercise a
> future power which lapses during the life of the holder
> of the power shall not be deemed an exercise or release
> of the power.  An amendment by your committee modifies
> this latter provision so as to exempt from estate and
> gift tax only limited amounts of property subject to
> lapsed powers.  The committee amendment provides an
> annual exemption with respect to the lapsed powers
> equal to $5,000 or 5 percent of the trust or fund in
> which the lapsed power existed, whichever is the
> greater.  Thus, for example, if a person has a
> noncumulative right to withdraw $10,000 a year from the
> principal of a $200,000 trust fund, failure to exercise
> this right will not result in either estate or gift tax
> with respect to the power over $10,000 which lapses
> each year prior to the year of death.  At his death
> there will be included in his gross estate the $10,000
> which he was entitled to draw for the year in which his
> death occurs, less any sums which he may have taken on

account thereof while he was alive during the year.  *
* *

S. Rept. 382, supra, 1951 U.S.C.C.A.N. at 1535.

The section 2041(b)(2) exception is an exception to be
applied to the property over which the decedent's general power
of appointment has lapsed and would otherwise be considered
released.  It is not an exception to be applied to property over
which the decedent still has a general power of appointment at
the time of death.  In the example, the exception was applied to
the amounts for the years for which B's power had lapsed.  As in
the facts of this case, B's final year's power had not lapsed at
the time of his death, so no exception was available for that
year.  The example in the regulation is not inconsistent with
section 2041(b)(2).

Congressional Intent

The Powers of Appointment Act of 1951 was enacted to remedy
problems with the changes made to then section 811(f) of the
Internal Revenue Code of 1939 by the Revenue Act of 1942.  See
Estate of Kurz v. Commissioner, 101 T.C. at 51; S. Rept. 382,
supra.  Section 811(f), as amended by the Revenue Act of 1942,
taxed most powers to appoint, whether exercised or not, and
applied to powers created prior to, as well as after, its
enactment.  This was in direct contrast to the previous version
of section 811(f), which provided that property subject to powers
of appointment was includable in the gross estate only if (1) the

decedent's power of appointment was general, (2) the power was in fact exercised, and (3) the appointive property passed as a result of the decedent's exercise of the power.  Estate of Kurz v. Commissioner, 101 T.C. at 51.  The 1942 Act included a short transition period to allow for the release of existing powers, but due to widespread dissatisfaction, Congress granted numerous extensions to the effective date of the amendment.  S. Rept. 382, supra.

The Powers of Appointment Act of 1951 effectively restored the law as it had existed prior to the 1942 Act for those powers of appointment created prior to the 1942 Act.  For powers created after that date, the 1951 Act maintained the general scheme of taxing powers, whether exercised or not, but added the lapsed powers provisions now codified as section 2041(b)(2), then section 811(f)(5).  The Senate Report commented:

> Since the problem of the termination or lapse of powers of appointment during life arises primarily in the case of dispositions of moderate-sized properties where the donor is afraid the income will be insufficient for the income beneficiary and therefore gives the income beneficiary a noncumulative invasion power, it is believed that the exemption provided in the committee amendment ($5,000 or 5 percent of the principal) will be adequate to cover the usual cases without being subject to possible abuses.
>
> The purpose of the new section 811(f)(5), added by this committee amendment, is to provide a determination, as of the date of the lapse of the power, of the proportion of the property over which the power lapsed which is not to be considered as a taxable disposition for estate tax purposes and the proportion thereof which, if other requirements of section 811 are

satisfied, will be considered as a taxable disposition.
* * *

S. Rept. 382, supra, 1951 U.S.C.C.A.N. at 1535-1536.

The section 2041(b)(2) exception was not intended as an exception to be applied to the property over which a decedent has a general power of appointment at the time of death but rather as an exception to be applied to the property over which such power has lapsed, property the value of which, after the 1951 Act, might be includable in the gross estate.  Based on the legislative history of section 2041(b)(2), we do not agree with the estate's argument that the inclusion of the final year's amount in decedent's gross estate defeats the purpose of that section.  See also Estate of Kurz v. Commissioner, supra, where we held that 5 percent of the principal of the family trust over which Mrs. Kurz held a general power of appointment was includable in her gross estate even though the principal of the marital trust had not yet been exhausted at the time of her death, a requirement for her to exercise her right to withdraw principal from the family trust.

The Estate's Lack of Dominion or Control

The estate's final argument is that since the estate has no dominion or control over the final year's amount, the estate should not be taxed on the value of that property.  Petitioner has cited no authority for this argument, but asserts that since

decedent had no testamentary powers over the final year's amount, such amount should not be included in her gross estate.

Section 2041(a)(2) requires inclusion of the value of "any property with respect to which the decedent has at the time of his death a general power of appointment * * * ".  The exceptions to the definition of general power of appointment listed in section 2041(b) do not include a power only exercisable during the holder's lifetime.  The inability of decedent to dispose of the property at her death does not prevent the inclusion of the final year's amount in her gross estate under section 2041(a)(2).

In conclusion, decedent's power over the trust had not lapsed at the time of her death.  Thus, section 2041(b)(2) does not apply to the year of her death.  We hold that the final year's amount ($67,458.50) is includable in her gross estate under section 2041(a)(2).

In keeping with the above holding and to allow for additional estate tax deductions for certain administration expenses under section 2053(a)(2),

Decision will be entered

under Rule 155.